22284

OCT 4 1976

CC-22,329   T:SRR

MEMORANDUM TO:   Acting Assistant Director
                 (Technical and Scientific Services)

         FROM:   Assistant Chief Counsel (Technical)

      SUBJECT:   Identification Requirements Under
                 Title I of the Gun Control Act

Reference is made to our recent discussions wherein you requested information regarding the identification requirements of the Federal firearms laws. Specifically, the following questions were raised:

1. Are unfinished die cast frames or investment cast frames firearms as that term is defined in the Gun Control Act?

2. What identification requirements are imposed upon the "manufacturers" of these items and their subsequent processors?

Under Title I of the Gun Control Act of 1968 (18 U.S.C., Chapter 44), it is unlawful for any person except a licensed manufacturer to engage in the business of manufacturing firearms, or in the course of such business to ship, transport, or receive any firearm in interstate or foreign commerce. Section 921(a)(3) defines the term firearm to mean "(A) any weapon (including a starter gun) which will or is designed to, or may readily be converted to expel a projectile by the action of an explosive; (B) the frame or receiver of any such weapon ...." Section 923(i) provides that licensed manufacturers shall identify, by means of a serial number engraved or cast on the frame or receiver of the weapon, in such manner as the Secretary shall by regulations prescribe, each firearm manufactured by such manufacturer.

ATF0265

22284

-2-

Acting Assistant Director
(Technical and Scientific Services)

The regulations found in 27 C.F.R. § 178.92 state in pertinent part:

> "Each licensed manufacturer ... of any firearm manufactured ... shall legibly identify each such firearm by engraving, casting, stamping (impressing), or otherwise conspicuously placing or causing to be engraved, cast, stamped (impressed) or placed on the frame or receiver thereof in a manner not susceptible of being readily obliterated, altered, or removed, an individual serial number not duplicating any serial number placed by the manufacturer ... on any other firearm, and by engraving, casting, stamping (impressing) or otherwise conspicuously placing or causing to be engraved, cast, stamped (impressed) or placed on the frame, receiver, or barrel thereof in a manner not susceptible of being readily obliterated, altered or removed, the model, if such designation has been made; the caliber or gauge; the name ... of the manufacturer and also ... in the case of a domestically made firearm, the city and State ... wherein the licensed manufacturer maintains his place of business; ... Provided, That the Director may authorize other means of identification of the licensed manufacturer ... [if] such other identification is reasonable and will not hinder the effective administration of this part ...."

The first question raised involves the classification of unfinished frames manufactured by either the die casting or investment casting method. The issue is whether these castings "may readily be converted to expel a projectile by the action of an explosive."

If the castings may be "readily converted" it is our view that they are firearms, and the manufacturers of these firearms must comply with the licensing, identification, and recordkeeping requirements of the Act.

ATF0266

22284

-3-

Acting Assistant Director
(Technical and Scientific Services)

In United States v. 16,179 Moslo Italian, .22 Caliber Windee Derringer Convertible Starter Guns, 443 F.2d 463 (2nd Cir. 1971), the court was asked to determine whether the phrase "may readily be converted" was constitutional. The lower court had found that the guns in question could be rendered usable for live ammunition in less than fifteen minutes. 314 F. Supp. 179 (E.D. N.Y. 1970). The appellate court, in upholding the constitutionality of the phrase "readily convertible," held that the test to be applied to the phrase was whether the language in the statute conveyed "sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices." See United States v. Petrillo, 332 U.S. 1 (1947).

A similar statutory provision was upheld in United States v. Catanzaro, 368 F. Supp. 450 (D. Conn. 1973). The issue in that case revolved around the words "readily restorable to fire," in 26 U.S.C. §§ 5845(d) and (e). The court held that the plain words of the statute indicated that the operative phrase referred to weapons which with "relative ease" could be made capable of firing. In that case, the process took approximately one hour. Furthermore, in United States v. Smith, 477 F.2d 399 (8th Cir. 1973) (per curiam), the court held that a submachinegun on which the barrel was welded closed at the breech and was also welded to the receiver on the outside under the handguard was "readily restorable to shoot" within the terms of 26 U.S.C. § 5845(b) despite the fact that the process of restoration would require eight hours work in a properly equipped machine shop.

In light of these judicial determinations we view the current Bureau procedure in classifying "firearms" on a case-by-case basis as consistent with the letter and spirit of the Gun Control Act. It is obvious that what constitutes "readily convertible" depends upon the nature of each "firearm." That there may be cases where it is difficult to determine the side on which a particular "firearm" falls is not a sufficient reason to establish a rigid criterion for the phrase "readily convertible."

ATF0267

22284

- 4 -

Acting Assistant Director
(Technical and Scientific Services)

We turn now to the question of the identification of these castings by the manufacturers. The term manufacture is defined in both the statute and the regulations under Chapter 44 to mean any person engaged in the manufacture of firearms for purposes of sale or distribution. The term manufacturing has been defined as the production, whether by hand or machinery, of a new and different article or product from raw or prepared materials. It is not necessary that such materials be made by the producer of the new article.

This office has previously held that if a process for making shoulder stocks includes either an alteration of the firearm to which they are to be attached or the actual attachment of the stocks to the firearms, or both, such activity would constitute manufacturing under the National Firearms Act (26 U.S.C. Chapter 53). (Chief Counsel's Opinion No. 16,630, dated August 8, 1958.)

We have also held that a company which is engaged in the business of manufacturing barrels and fitting them to frames or receivers acquired from independent sources to be a manufacturer under Chapter 44. (Chief Counsel's Opinion No. 21,142-1, dated January 11, 1971; see also Chief Counsel's Opinion No. 21,177, dated February 11, 1971.) In Opinion No. 21,177, it was held that the delivery of machinegun frames and/or silencers by the Military Armament Corporation to Dixie Industrial Finishes in Atlanta and Statle Corporation in Sidney, Ohio, for purposes of phosphatizing and black anodizing would require both firms to obtain a manufacturer's license under Chapter 44 and to register and pay the special occupational taxes under Chapter 53. Both firms were regarded as performing one of the procedures in the manufacturing process.

22284

-5-

Acting Assistant Director.
(Technical and Scientific Services)

Additionally, in 55 C.J.S. Manufacturers, p. 685, the following is stated:

> "Manufacture has been held to describe the process of assembling articles which, while complete and finished, have no independent utility, but are designed to be used in combination as parts of some other article, such as a typewriter, an automobile, or the like, but when so used, the process of assembling usually, if not always, involves the exercise of manual or mechanical skill and labor and the more or less extensive use of auxilliary machinery. However, the assembling of parts which have previously been manufactured or partially manufactured is not a manufacturer of component parts, but it may be regarded as a manufacture of the completed article, although it has been held that the assembling process will not be regarded as the manufacture of the article if it involves only an infinitesimal amount of work compared with the work of producing the component parts."

In the case of <u>Magnesium Casting Co. v. United States</u>, 323 F.2d 952 (1st Cir. 1963), where the court, faced with the issue as to whether the appellant taxpayer owed manufacturer's excise taxes imposed by sections 3408(a) and 4201 of the 1939 and 1954 Internal Revenue Codes, stated that a taxpayer would be considered a manufacturer within the excise tax statute where he purchased lighter mechanisms and manufactured the lighter base to receive the mechanism and then sold the mechanism and base together as a table lighter. The court also indicated that an article is being "manufactured" through all of its stages and this does not cease to be so simply because at an earlier stage it had already achieved described status. See also, <u>Select Imports, Inc. v. Campbell, Jr.</u>, 196 F. Supp. 181

ATF0269

22284

-6-

Acting Assistant Director
(Technical and Scientific Services)

(N.D. Tex. 1961), where it was held that a manufacturer within the manufacturer's excise tax statute may be one who assembles articles or fabrics that someone else has made. Here the taxpayer purchased and imported lighter bases, selling components as assembled. The court held that he was a manufacturer liable for the manufacturer's excise tax. While these decisions are under the manufacturer's excise tax statute, we feel that their rationale must be considered applicable to the present situation.

In view of the above we feel that each person engaged in performing one of the procedures in the manufacturing process, for example, a manufacturer of frames and receivers, and those who assemble a firearm from parts, are manufacturers within Chapter 44 (and within Chapter 53 in the case of NFA weapons) and must comply with the pertinent identification requirements, e.g., a serial number must be placed on each such firearm manufactured.

The additional identification requirements enumerated in section 178.92 may be varied if the Director finds that the alternate identification is reasonable and will not hinder the effective administration of the Act.

We recognize that the identification requirements mandated by a strict interpretation of Chapter 44 could lead to multiple serial numbers on a firearm. Section 923(i) states that a serial number shall be engraved on the receiver or frame of the weapon (emphasis added). A liberal interpretation of this language could excuse all of the manufacturers, except the final assembler of the weapon, from placing a serial number on the firearm. We note, however, that this could impede the Bureau in its law enforcement activities, e.g., the tracing of stolen frames or receivers prior to their use in the final assembly of an operable firearm. In order to effect this

22284

-7-

Acting Assistant Director
(Technical and Scientific Services)

construction, a regulation would be required. Until such time that this regulation is promulgated, the existing identification requirements should be continued.

/s/ Jack B. Patterson

Jack B. Patterson

SRRubenstein:de   10/1/76

ATF0271

22284