Case No. 21-CV-00690

Dept. No. I

The undersigned affirms that this document does not contain the social security number of any individual.

FILED

2021 DEC 10 AM 9:54

TANYA SCEIRINE
COURT ADMINISTRATOR
THIRD JUDICIAL DISTRICT
Kathy Thomas

**IN THE THIRD JUDICIAL DISTRICT COURT OF THE STATE OF NEVADA**

**IN AND FOR THE COUNTY OF LYON**

POLYMER80, INC.,

Plaintiff,

vs.

STEPHEN SISOLAK, Governor of Nevada, AARON FORD, Attorney General of Nevada, GEORGE TOGLIATTI, Director of the Nevada Department of Public Safety, MINDY MCKAY, Administrator of the Records, Communications, and Compliance Division of the Nevada Department of Public Safety,

Defendants.

_______________________________________/

**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER GRANTING SUMMARY JUDGMENT IN FAVOR OF PLAINTIFF, POLYMER80, INC.**

This matter is before the Court upon the parties' competing Motions for Summary Judgment both filed on November 8, 2021, and duly opposed by each party on November 18, 2021. The matter was set for argument on November 23, 2021. Plaintiff was present and represented by Brad Johnston, Esq., of Simons Hall Johnston PC (via Zoom) and James J. McGuire, Esq., (pro hac vice) of Greenspoon Marder LLP, who was present in Court. The Defendants were represented by Craig A. Newby, Esq., Deputy Solicitor General, who was present in Court.

This Court, having reviewed and considered the parties' respective motions and oppositions for summary judgment, considered the exhibits thereto and arguments therein, conducted a hearing upon those motions, and heard oral argument from counsel for Polymer80 and for Defendants, and

good cause appearing, makes the following FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDERS.

**I**

**PROCEDURAL HISTORY**

During the 81st legislative session, the Nevada Legislature passed Assembly Bill 286 ("AB 286"). AB 286 is -- "AN ACT relating to crimes; prohibiting persons from engaging in certain acts relating to unfinished frames or receivers under certain circumstances; ... providing penalties; and providing other matters properly relating thereto." Nevada Governor, Stephen Sisolak, signed AB 286 into law on June 7, 2021.

On June 22, 2021, Plaintiff, Polymer80, Inc. ("Polymer80"), filed this lawsuit against Defendants, Stephen Sisolak, Governor of Nevada, Aaron Ford, Attorney General of Nevada, George Togliatti, Director of the Nevada Department of Public Safety, and Mindy McKay, Administrator of the Records, Communications, and Compliance Division of the Nevada Department of Public Safety (collectively referred to as "Defendants"), alleging that Sections 3 and 3.5 of AB 286 are unconstitutionally vague under the Due Process Clause of the Constitution of the State of Nevada ("Nevada Constitution"). In its Verified Complaint, Polymer80 sought a Declaration from this Court that Sections 3 and 3.5 of AB 286 violate the Nevada Constitution and a Permanent Injunction barring enforcement of the new law.

On June 25, 2021, Polymer80 filed its *Motion for Temporary Restraining Order and Preliminary Injunction*. After briefing and a hearing, this Court, on July 16, 2021, entered its *Order Granting Preliminary Injunction*, preliminarily barring enforcement of Section 3.5 of AB 286.[1] That Order is currently pending appeal at the Nevada Supreme Court.

[1] At that time, this Court declined to enter a Preliminary Injunction as to the enforcement of AB 286 Section 3, because that portion of the new statute would not go into effect until January 1, 2022.

Thereafter, the Court held a Case Management and Scheduling Conference on July 14, 2021, that resulted in a July 15, 2021, *Case Management and Trial Scheduling Order* setting an expedited trial date of November 30, 2021. That Order also provided that the parties could engage in discovery through November 1, 2021, and fixed November 8, 2021, as the deadline for filing dispositive motions. By so ruling, this Court wanted to, and did, afford the parties the opportunity to develop the evidentiary record to be presented upon motions for summary judgment and/or at trial.

In the ensuing months, the parties proceeded with discovery. Both Polymer80 and Defendants timely filed Motions for Summary Judgment on November 8, 2021.[2] Pursuant to the parties' Stipulation, this Court directed that they file their oppositions to the other side's summary judgment motion on November 18, 2021, dispense with reply briefs, and proceed to a full hearing on November 23, 2021. That hearing was held as scheduled and the Court heard substantial argument from the parties. Notably, both parties agreed at that hearing that this Court could decide this case upon the record before it at that point, and that a trial was unnecessary. At the conclusion of the hearing, the Court rendered an oral ruling granting Polymer80 summary judgment. This Order follows and memorializes that ruling.

Accordingly,

IT IS HEREBY ORDERED that the *Motion of Polymer80, Inc., for Summary Judgment* is GRANTED, and that *Defendants' Motion for Summary Judgment* is DENIED, for the reasons set forth herein and on the record at the November 23, 2021, hearing.

---

[2] Before the parties filed their competing Motions for Summary Judgment, Defendants filed an appeal from this Court's *Order Granting Preliminary Injunction*. Thereafter, Defendants filed a Motion to Stay this case in this Court, arguing, among other things, that this matter presented a pure question of law that would be resolved upon their then-pending appeal. This Court denied Defendants stay, largely because the issue on appeal was not the ultimate question of whether or not AB 286 was and is unconstitutionally vague but whether or not this Court had abused its discretion in granting interim relief. Moreover, a stay would have only delayed a ruling on the constitutionality of AB 286, which would not have been in the best interests of either Plaintiff or Defendants.

## II

## CONTESTED PROVISIONS OF AB 286

The 81st Nevada Legislature amended Chapter 202 of the Nevada Revised Statutes by adding, among others, the following provisions, which are the subject of this proceeding.

First, Section 3 of AB 286, effective as of January 1, 2022, provides as follows:

> 1. A person shall not possess, purchase, transport or receive an unfinished frame or receiver unless:
>
> (a) The person is a firearms importer or manufacturer; or
>
> (b) The unfinished frame or receiver is required by federal law to be imprinted with a serial number issued by a firearms importer or manufacturer and the unfinished frame or receiver has been imprinted with the serial number.
>
> 2. A person who violates this section:
>
> (a) For the first offense, is guilty of a gross misdemeanor; and
>
> (b) For the second or any subsequent offense is guilty of a category D felony and shall be punished as provided in NRS 193.130.[3]

Plainly, this provision makes it a crime to "possess, purchase, transport or receive an unfinished frame or receiver" in the State of Nevada.

Second, Section 3.5 of AB 286, which became effective on June 7, 2021, provides as follows:

> 1. A person shall not sell, offer to sell or transfer an unfinished frame or receiver unless:
>
> (a) The person is:
>
> (1) A firearms importer or manufacturer; and
>
> (2) The recipient of the unfinished frame or receiver is a firearms importer or manufacturer; or
>
> (b) The unfinished frame or receiver is required by federal law to be imprinted with a serial number issued by an importer or manufacturer and the unfinished frame or receiver has been imprinted with the serial number.

[3] NRS 193.130 provides that a category D felony is punishable by 1-4 years in Nevada State Prison and a fine of up to $5,000.00.

> 2. A person who violates this section:
> (a) For the first offense, is guilty of a gross misdemeanor; and
> (b) For the second or any subsequent offense is guilty of a category D felony and shall be punished as provided in NRS 193.130

This Section makes it a crime to "sell, offer to sell or transfer an unfinished frame or receiver" in the State of Nevada.

Section 6 of AB 286 amended NRS 202.253 by adding the term "[u]nfinished frame or receiver" to Nevada law and defines that term as follows:

> 9. "Unfinished frame or receiver" means a blank, a casting or a machined body that is intended to be turned into the frame or lower receiver of a firearm with additional machining and which has been formed or machined to the point at which most of the major machining operations have been completed to turn the blank, casting or machined body into a frame or lower receiver of a firearm even if the fire-control cavity area of the blank, casting or machined body is still completely solid and unmachined.

Polymer80 argues that Sections 3 and 3.5 of AB 286 are unconstitutionally vague under the Due Process Clause of the Nevada Constitution.[4]

## III

## STANDARD ON SUMMARY JUDGMENT

Summary judgment is appropriate, where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." NRCP 56(c). While this Court must construe the evidence in the light most favorable to the nonmoving party upon such a motion, the nonmoving party "bears the burden to do more than simply show that there is some metaphysical doubt as to the operative facts in order to avoid

---

[4] This decision does not extend to Section 4 or 5 of AB 286 and this Court makes no judgment relating to the efficacy of those provisions.

summary judgment being entered in the moving party's favor." *Wood v. Safeway, Inc.*, 121 Nev. 724, 732 (2005) (quotations omitted). "The nonmoving party must, by affidavit or otherwise, set forth specific facts demonstrating the existence of a genuine issue for trial or have summary judgment entered against him." *Id.* And, the party opposing summary judgment cannot build a case on the "'gossamer threads of whimsy, speculation, and conjecture.'" *Id.* (quoting *Bulbman, Inc. v. Nevada Bell*, 108 Nev. 105, 110 (1992)). Critically, the Nevada Supreme Court, as the parties have acknowledged, has held that summary judgment is appropriate with respect to, as here, a facial Due Process challenge on vagueness grounds to the constitutionality of a criminal statue. *See Flamingo Paradise Gaming, LLC v. Chanos*, 125 Nev. 502, 508-09 (2009). As explained below, there are no "genuine issues of material fact" precluding summary judgment, and this Court may properly resolve this action on summary judgment upon the record before it.

**IV**

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

Polymer80 is a Nevada corporation headquartered in Dayton, Nevada, within Lyon County. It manufactures, designs, and distributes gun-related products, components, and after-market accessories. The legislative history reveals that AB 286 has targeted, at least partially, certain of Polymer80's business products. Defendants have also admitted as much in their Answer and in their moving papers. As set forth in the testimony of Assemblywoman Sandra Jauregui:

> . . . a Nevada based company, Polmer80, Inc., [is] one of the nation's largest manufacturers of ghost guns.

Minutes, Assembly Committee on Judiciary, p.6 (March 17, 2021). Assemblyman Wheeler stated therein:

> The kit guns you called ghost guns are used by a lot of hobbyists. Under federal law, those are quite legal, so outlawing them in Nevada, as this bill tries to do, basically puts a company [Polmer80] in my district out of business. . . .
> We are going to drive a company in my district out of business, but people can still buy them in Kentucky. . .

Minutes, Assembly Committee on Judiciary, p.13-14 (March 17, 2021).[5]

## A. STANDING OF POLMER80

In Defendants' Answer and at the Motion for Preliminary Injunction hearing, the State of Nevada contested Polymer80's standing to contest the constitutional validity of AB 286. The Defendants' have not argued a lack of standing on summary judgment. However, Polymer80 asserts in their Motion that they indeed have standing.

NRS 30.040 provides, in pertinent part:

> **NRS 30.040. Questions of construction or validity of . . . statutes.**
>
> 1. Any person . . . whose rights, status or other legal relations are affected by a statute . . . may have determined any question of construction or validity arising under the . . . statute . . . and obtain a declaration of rights, status or other legal relations thereunder.

NRS 30.040(1). In Nevada, the issue of Standing is a question of law. *Arguello v. Sunset Station, Inc.*, 127 Nev. 365, 368 (2011). As explained recently by the Nevada Supreme Court:

> The question of standing concerns whether the party seeking relief has a sufficient interest in the litigation. The primary purpose of this standing inquiry is to ensure the litigant will vigorously and effectively present his or her case against an adverse party. Thus, a requirement of standing is that the litigant personally suffer injury that can be fairly traced to the allegedly unconstitutional statute and which would be redressed by invalidating the statute. A general interest in the matter is normally insufficient: a party must show a personal injury.

*Flor Morency v Nevada Department of Education*, 137 Nev. Adv. Op. 63, p. 7, 496 P.3d 584 (Oct. 7, 2021), (Citations Omitted).

[5] This Court notes that there are multiple references to Polmer80 in the legislative history of AB 286 all indicating the negative impact of the bill on their ability to conduct business in the State of Nevada.

This Court finds that Polymer80 has standing to mount a facial vagueness challenge to the constitutionality of AB 286. Like the Plaintiffs in *Flamingo Paradise Gaming, LLC v. Chanos*, 125 Nev. 502, 508-09 (2009), Polymer80 could be subject to criminal prosecution stemming from its ongoing conduct. Polymer80's facial challenge to AB 286 is ripe for this Court's adjudication as Section 3.5 of AB 286 took effect earlier this year upon approval by the Governor and Section 3 of AB 286 takes effect January 1, 2022. Accordingly, it is ripe for this Court to determine whether or not both of those Sections of AB 286 are unconstitutionally vague under the Due Process Clause of the Nevada Constitution.

Polymer80 satisfies the requirement to show that they would "personally suffer injury that can fairly be traced to the allegedly unconstitutional statute" by facing the prospect of felony criminal prosecution each time they produce a product which allegedly falls under the purview of the statute. Further, Polymer80 would suffer significant economic loss as set forth in the Deposition testimony submitted, and uncontested by the Defendants. This, combined with the legislative history showing that the thrust of the bill was to put Polymer80 out of business, clearly establishes that, unlike any other potential litigant, Polymer80 will vigorously and effectively present the case for facial invalidity of the statute – which is Polymer80's only true redress.

This Court determines that Polymer80 will suffer irreparable harm in the absence of declaratory and/or injunctive relief, since, as under *Flamingo*, that harm exists if a Nevadan, such as Polymer80, must conduct its affairs in the wake of criminal jeopardy that fails to provide fair notice of the conduct being criminalized.[6]

[6] The Defendants previously argued at the preliminary injunction hearing that Section 3(1)(b) would mitigate any harm as all Polymer80 would have to do is put a serial number on its products. The

**B.     STANDARD OF REVIEW FOR A FACIAL VAGUENESS CHALLENGE**

The question before this Court is essentially whether or not AB 286 is unconstitutionally vague under the Due Process Clause of the Nevada Constitution. It is undisputed that Section 3 and Section 3.5 of AB286 are criminal statutes with penalties being elevated as high as category D felonies.

Nevada's Due Process Clause states simply that "No person shall be deprived of life, liberty, or property, without due process of law." Nev. Const., Art. 1, Sec. 8(2). In Nevada, the determination of whether a statute is constitutional is a question of law. *Silvar v. Dist. Ct.*, 122 Nev. 289, 292, 129 P.3d 682, 684 (2006).

> Statutes are presumed to be valid, and the challenger bears the burden of showing that a statute is unconstitutional. The court must interpret a statute in a reasonable manner, that is, [t]he words of the statute should be construed in light of the policy and spirit of the law, and the interpretation made should avoid absurd results. In reviewing a statute, it should be given [its] plain meaning and must be construed as a whole and not be read in a way that would render words or phrases superfluous or make a provision nugatory.

*Flamingo Paradise Gaming v. Att'y General*, 125 Nev. 502, 509 (2009). In reviewing the statute, "every reasonable construction must be resorted to, in order to save a statute from unconstitutionality." *State v. Castaneda*, 126 Nev. 478, 481, 245 P.3d 550, 552 (2010).

The Nevada Supreme Court has adopted a two-pronged test for determining whether a criminal statute is so impermissibly vague as to run afoul of the due process clause of the Nevada

---

argument was abandoned on summary judgment. Section 3(1)(b) and Section 3.5(1)(b) by their own terms only provide relief when the "unfinished" frame or receiver is "required" by federal law to be imprinted with a serial number. It is undisputed that the products produced by Polymer80 are not required by federal law to have a serial number imprinted on them.

Constitution. *See, e.g., Flamingo Paradise Gaming,* 125 Nev. at 510; *Gallegos v. State*, 123 Nev. 289, 294 (2007).

> A criminal statute can be invalidated for vagueness (1) if it fails to provide a person of ordinary intelligence fair notice of what is prohibited *or* (2) if it is so standardless that it authorizes or encourages seriously discriminatory enforcement.

*Scott v. First Jud. Dist. Ct.*, 131 Nev. 1015, 1021 (2015). Although both civil and criminal statutes are judged under the same test, the Nevada Supreme Court has explained:

> [T]here are two approaches to a facial vagueness challenge depending on the type of statute at issue. The first approach arises under a facial challenge to a civil statute and the plaintiff must show that the statute is impermissibly vague in all of its applications. In making this showing, [a] complainant who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others. **But, when the statute involves criminal penalties or constitutionally protected rights, the second approach involves a higher standard of whether "vagueness permeates the text.**

*Flamingo,* 125 Nev. at 512.[7] Where a statute imposes criminal penalties, as is the case with AB 286, the more exacting standard for Constitutionality is imposed.

> Under the higher standard, the question becomes whether vagueness so permeates the text that the statute cannot meet these requirements in most applications; and thus, this standard provides for the possibility that some applications of the law would not be void, but the statute would still be invalid if void in most circumstances.

*Flamingo*, 125 Nev. at 507.

---

[7] The Defendants have urged this Court to roll back *Flamingo* and apply the "clearly proscribed conduct" test to this criminal statute as set forth in *Sheriff of Washoe Cty v. Martin*, 99 Nev. 336, 340 (1983) (citing *Hoffman Estates v. Flipside, Hoffman Estate, Inc.*, 455 U.S. 489, 495 (1982). This Court declines to do so as *Flamingo* made clear that under the Nevada Constitution the "clearly proscribed conduct" analysis applies to vagueness challenges of civil statutes where facial vagueness challenges need to show that the law is "impermissibly vague in all its applications."

In this Court's view, AB 286, a criminal enactment, fails under both prongs for various reasons resulting in an unconstitutionally vague statute under Nevada Constitutional law. While similar, "the first prong is concerned with guiding those who may be subject to potentially vague statutes, while the second -- and more important -- prong is concerned with guiding the enforcers of statutes." *Silvar v. Dist. Ct.*, 122 Nev. 289, 293, 129 P.3d 682, 685 (2006).

**C. SECTIONS 3 AND 3.5 OF AB 286 FAIL TO PROVIDE A PERSON OF ORDINARY INTELLIGENCE FAIR NOTICE OF WHAT IS PROHIBITED**

Section 3 and Section 3.5 of AB 286 fail to provide a person of ordinary intelligence with fair notice of the conduct which it proscribes. The underlying purpose of this factor is to give a person "notice of the law so they can conform their conduct to its requirements." *Gallegos v. State*, 123 Nev. 289, 295 (2007). Those sections of AB 286 criminalize the possession, purchase, transport, receipt, transfer and sale of what the statute calls an "unfinished frame or receiver." While AB 286 purports to define the term "unfinished frame or receiver," that definition is as follows:

> [A] blank, a casting or a machined body that is intended to be turned into the frame or lower receiver of a firearm with additional machining and which has been formed or machined to the point at which most of the major machining operations have been completed to turn the blank, casting or machined body into a frame or lower receiver of a firearm even if the fire-control cavity area of the blank, casting or machined body is still completely solid and unmachined.

This definition does not provide a person of ordinary intelligence with adequate notice of what AB 286 criminalizes.

As stated above, the crimes established in Section 3 and 3.5 are purely the result of Nevada legislative statutory enactment. The terms used in the definition of "unfinished frame or receiver" are not defined elsewhere in the statute. These terms include - blank, casting, machined body, machining, major machining operations, frame or lower receiver of a firearm, and/or fire-control cavity area.

The definition does not tell anyone when during the manufacturing process a blank, casting, or machined body (whatever those terms mean) has gone through the "major machining operations"

(whatever those are) to turn that blank, casting, or machined body into a frame or lower receiver of a firearm (whatever that may be), a person of ordinary intelligence could not proscribe their conduct to comply with the law. As a result, this Court finds that the text of AB 286 does not provide fair notice of whatever it criminalizes. To this end, this Court asked on multiple occasions during oral argument on the Motion for Summary Judgment what those terms as used in AB 286 mean. Tellingly, the Defendants could not in any manner explain their meaning(s).

This Court inquired whether or not the common law defined the terms used in AB 286, and the response that this Court received was clearly in the negative. As such, this Court cannot use the common law to decipher, clarify, or define the inherently vague terms of AB 286. This fact distinguishes this case from *State v. Castaneda*, 126 Nev. 478 (2010)(Common Law definition of indecent exposure – a common law crime), where the Nevada Supreme Court found that that the common law can provide a definition as to what conduct a statute prohibits. This Court inquired as to whether any other Nevada statutes or Nevada case law defined the terms found in AB 286 and, again, the answer was no. As a consequence, this case is also distinguishable from *Silverwing Development v. Nevada State Contractors Board*, 136 Nev. Adv. Rep. 74, 476 P.3d 461 (2020), (Commonly accepted definition of "subdivision" contained within the State's planning and zoning statutes) where the Nevada Supreme Court rejected a vagueness challenge, when Nevada law elsewhere defined an allegedly ambiguous term. Thus, neither the common law nor any other Nevada statutes or authorities define or clarify the vagueness that permeates the text of AB 286.

While portions of AB 286 incorporate certain terms that are defined in federal legislation, this Court cannot imply that the Nevada Legislature wanted to incorporate all the existing federal definitions relating to firearms or the Gun Control Act into AB 286. Here, the Nevada Legislature purposely included some federal definitions into AB 286 but, deliberately did not include others. From that fact, this Court can only conclude that the Nevada Legislature purposely did so absent some legislative declaration to the contrary. Simply put, had the Nevada Legislature wished to incorporate other federal definitions into AB 286, it knew how to do so and would have done so. It

did not. And so, this Court will not do what the Nevada Legislature deliberately declined or failed to do.[8]

In *Gallegos v. State*, 123 Nev. 289 (2007), the Nevada Supreme Court was faced with the same dilemma. In *Gallegos*, the legislature criminalized the possession of firearms by a "fugitive from justice." The legislature failed to define what the term "fugitive from justice" meant in relation to the statute. The District Court upheld the validity of the statute and applied the federal definition of "fugitive from justice" into the statute to provide meaning. The Nevada Supreme Court reversed stating:

> Unlike Congress, the Nevada Legislature has not defined "fugitive from justice." By failing to adopt the federal definition of "fugitive from justice" or include any definition of that phrase. . ., the Legislature failed to provide the public with statutory notice of what that term means. It could arguably encompass a wide variety of circumstances. . . The fact that the district court, sua sponte, adopted the 18 U.S.C. § 921(a)(15) definition in this case does not remedy that deficiency.

*Gallegos v. State*, 123 Nev. @ 294-95.

Finally, the legislative history of AB 286 does not shed any light on the undefined terms used in AB 286 nor the meaning of "unfinished frame or receiver." To the contrary, that history illustrates that the State Legislature received comments during the legislative process that AB 286 was vague, and that the definition of "unfinished frame or receiver" was particularly uncertain. Rather than address the issue through comments or revising the text of AB 286, the Nevada Legislature remained silent. Thus, the legislative history does not aid this Court in unearthing the meaning of the vague

---

[8] The Defendants have proposed two separate definitions for the Court to "imply" into the statute to define what a Frame or Receiver is. Both definitions differed substantially. Federal Law (27 CFR § 478.11) defines "firearm frame or receiver" as "that part of a firearm which provides housing for the hammer, bolt or breechblock, and firing mechanism, and which is usually threaded at its forward portion to receive the barrel." The Defendants' second proposed definition comes from the Glossary of the Association of Firearm and Toolmark Examiners defining "frame or receiver" as "the finished part which is capable of being assembled with other parts to put together a firearm."

and undefined terms used in AB 286. It is noteworthy that the parties agreed that the legislative history for AB 286 gives this Court no information to determine what the Nevada Legislature meant when adopting and implementing the definition of "unfinished frame or receiver." Tellingly, not even Webster's Dictionary defines a majority of these terms.

Defendants contend that since AB 286 includes a *scienter* element, the statute is not void for vagueness. This Court finds this contention unpersuasive. The criminal acts defined in Sections 3 and 3.5 of AB 286 do not contain a *scienter* element, as they criminalize, among other things, the possession and sale of "unfinished frames and receivers," whatever those things may actually be. And, the person possessing or selling those "unfinished frames and receivers" need not have any particular specific intent. In fact, AB 286 only and very generally employs intent in the definition of "unfinished frame or receiver," stating an "unfinished frame or receiver" is "a blank, a casting or a machined body that is ***intended*** to be turned into the frame or lower receiver of a firearm." The use of the word "intended" in this definition does not create the *scienter* element defendants claim to exist within Section 3 and Section 3.5 of the bill.

Here, a literal reading of the definitional statute requires that the blank, casting or machined body (all inanimate objects) be intended to be turned into the frame or lower receiver of a firearm. Nowhere in the definitional statute does it indicate who would have to have intended the unfinished frame or receiver to be transformed into a firearm. Is it the manufacturer like Polymer80? It is undisputed that it is their intent not to make a firearm. Is it the seller of a gun kit? They have no intent to make a firearm. The object itself cannot transfer specific intent to the possessor of the item.

Even if this Court were to assume an intent element was specifically meant to apply to any individual purportedly violating Section 3 and 3.5, the statute would still be unconstitutionally vague. For example, if Section 3 criminalized the possession of a blank, casting, or machined body only if the person who possessed such an item (whatever it might actually be) specifically intended to turn it into the frame or lower receiver of a firearm with additional machining, AB 286 would still be unconstitutionally vague.

In this regard, the statute is expressly conjunctive, such that the blank, casting, or machined body must: (i) be intended to be turned into the frame or lower receiver of a firearm with additional

machining, and (ii) already be formed or machined to the point at which most of the major machining operations have been completed. Yet, none of these terms are defined, nor is there any way to know when "most of the major machining operations have been completed," and then what "additional machining" must still occur and when. Accordingly, any specific intent that can be read into Sections 3 and 3.5 of AB 286 does not salvage the statute, because, even with an intent element, AB 286 still fails to provide adequate notice as to what it specifically criminalizes.

Sections 3 and 3.5 of AB 286 create a new crimes that do not exist under federal law or common law. Consequently, the only notice of what AB 286 criminalizes is provided in the statute itself. However, the law does not provide adequate notice of what it criminalizes, given that the definition of "unfinished frame or receiver" uses a myriad undefined terms. Moreover, the combined use of these undefined terms results in an overall failure to provide a person of ordinary intelligence with fair notice of what is criminalized. As there is no well-established or ordinary meaning to the terms used in AB 286, Section 3 and Section 3.5 are unconstitutionally vague under the Due Process Clause of the Nevada Constitution.

## D. SECTIONS 3 AND 3.5 OF AB 286 ARE SO STANDARDLESS THAT IT AUTHORIZES OR ENCOURAGES SERIOUSLY DISCRIMINATORY ENFORCEMENT

This Court now turns to whether AB 286 "is so standardless that it authorizes or encourages seriously discriminatory enforcement." *Scott v. First Jud. Dist. Ct.*, 131 Nev. 1015, 1021 (2015). The Court finds that it is.

As explained by the Nevada Supreme Court:

> The concern under this prong is the scope of discretion left to law enforcement officials and prosecutors. Our fear is that absent adequate guidelines, a criminal statute may permit a standardless sweep, which would allow the police, prosecutors, and juries to 'pursue their personal predilections.'

*Gallegos*, 125 Nev. @ 296. (Citation Omitted)

AB 286 fails to establish clear standards that law enforcement can use to determine whether the law is violated. At its most basic, there is no clear standard for law enforcement to use to

determine when an "unfinished frame or receiver" comes into existence. Unlike the federal regulatory process to determine whether a frame or lower receiver is considered a firearm under the Gun Control Act, Nevada has established no authority at all to determine when an "unfinished frame or receiver" actually comes into existence. The most any court can glean from the definition is that it is something less than a firearm and more than a block of raw material. Where on the scale in between both extremes the ill-defined "unfinished frame or receiver" lands is unknown under the law and left to the sole discretion of law enforcement and prosecutors. When does the machining process start? When does the raw material become machined and through what processes? What constitutes a "major machining operation" versus machining itself? Would the "fire-control cavity" be considered a "major machining operation" or is it excluded? What additional machining needs to be completed? It is unclear and undefined under the statute.

Nevadans would face the risk of discriminatory enforcement by police and prosecutors alike as they, in their sole discretion and without guidance, could label almost anything an "unfinished frame or receiver," if it in any way even resembles a firearm's undefined frame or lower receiver. There is no clear statutory language to bridle that discretion or to prevent state actors from pursuing their personal predilections.

Ordinary Nevada citizens are at risk of arbitrary and discriminatory enforcement of Section 3 and 3.5 of AB 286 owing to the vagueness that permeates the text of the law. Therefore, enforcement of AB 286 is standardless to such a degree that it authorizes and/or encourages arbitrary and discriminatory enforcement.

For this additional reason, the Court finds that Sections 3 and 3.5 of AB 286 are unconstitutionally vague under the Nevada Constitution's Due Process Clause.

## V

## ORDER AND JUDGMENT

Based upon all of the foregoing, the Court finds that Section 3 and 3.5 of AB 286 are unconstitutionally vague, insofar as the law: (i) fails to provide a person of ordinary intelligence with fair notice of the conduct that is prohibited, and (ii) is so standardless that it authorizes and encourages seriously arbitrary and discriminatory enforcement.

Good cause appearing,

IT IS HEREBY ORDERED that the *Motion of Polymer80, Inc, for Summary Judgment* is GRANTED.

IT IS HEREBY FURTHER ORDERED that *Defendants' Motion for Summary Judgment* is DENIED.

IT IS HEREBY FURTHER ORDERED that a Declaratory Judgment be entered in favor of Polymer80 and against Defendants; to wit,

IT IS HEREBY FURTHER ORDERED, DECREED AND DECLARED that Section 3 and Section 3.5 AB 286 are unconstitutionally vague and violate the Due Process Clause of the Nevada State Constitution.

IT IS HEREBY FURTHER ORDERED that a Permanent Injunction be entered in favor of Polymer80 and against Defendants; to wit,

IT IS HEREBY ORDERED that the State of Nevada and Defendants, STEPHEN SISOLAK, Governor of Nevada, AARON FORD, Attorney General of Nevada, GEORGE TOGLIATTI, Director of the Nevada Department of Public Safety, MINDY MCKAY, Administrator of the Records, Communications, and Compliance Division of the Nevada Department of Public Safety, and their respective successors, officers, agents, servants, and employees and anyone acting in concert with them, individually and/or collectively, are hereby permanently enjoined from enforcing Section 3 and Section 3.5 of AB 286.

IT IS HEREBY FURTHER ORDERED that the security Polymer80 previously posted with this Court pursuant to NRCP 65(c) in the amount of $20,000.00 (Twenty Thousand Dollars) be exonerated and released to Polymer80 forthwith.

THIS IS A FINAL JUDGMENT.

DATED this 10th day of December, 2021.

**JOHN P. SCHLEGELMILCH,**
**DISTRICT JUDGE**

Case No. 21-CV-00690

Dept. No. I

**Certificate of Mailing**

I hereby certify that I, Andrew C. Nelson, am an employee of the Third Judicial District Court, and that on this date pursuant to NRCP 5(b), a true copy of the foregoing document was mailed at Yerington, Nevada addressed to:

Gregory L. Zunino, Esq.
**Emailed*: gzunino@ag.nv.gov

Brad M. Johnston, Esq.
**Emailed: bjohnston@shjnevada.com*

James J. McGuire, Esq.
**Emailed: james.mcguire@gmlaw.com*

Michael Patrick, Esq.
**Emailed: michael.patrick@gmlaw.com*

Mark Doerr
**Emailed: mark.doerr@gmlaw.com*

Craig A. Newby, Esq.
**Emailed: CNewby@ag.nv.gov*

DATED: This 10th day of December, 2021.

A C Nelson

Employee of Hon. John P. Schlegelmilch