IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| MOREHOUSE ENTERPRISES, LLC )<br>d/b/a BRIDGE CITY ORDNANCE, ELIEZER )<br>JIMENEZ, GUN OWNERS OF )<br>AMERICA, INC., and GUN OWNERS )<br>FOUNDATION )<br>)<br>    Plaintiffs, )<br>)<br>    v. )<br>)<br>BUREAU OF ALCOHOL, TOBACCO, )<br>FIREARMS AND EXPLOSIVES; UNITED )<br>STATES DEPARTMENT OF JUSTICE; and )<br>GARY M. RESTAINO AS THE ACTING )<br>DIRECTOR OF ATF, )<br>)<br>    Defendants. )<br>)<br>_____) | Case No. _____ |

**AFFIDAVIT OF KAILEY PATTERSON**

1. My name is Kailey Patterson. I am the Director of Development and Marketing for Plaintiffs Gun Owners of America, Inc. and the Director of Development for Gun Owners Foundation.

2. Gun Owners of America, Inc. ("GOA") is a California non-stock corporation with its principal place of business at 8001 Forbes Place, Springfield, VA 22151.  GOA is organized and operated as a non-profit membership organization that is exempt from federal income taxes under Section 501(c)(4) of the U.S. Internal Revenue Code.  GOA was formed in 1976 to preserve and defend the Second Amendment rights of gun owners.  GOA has more than two million members and supporters across the country, including residents of the district of North Dakota.

3.  Gun Owners Foundation ("GOF") is a Virginia non-stock corporation, with its principal place of business at 8001 Forbes Place, Springfield, VA 22151.  GOF is organized and operated as a non-profit legal defense and educational foundation that is exempt from federal income taxes under Section 501(c)(3) of the U.S. Internal Revenue Code. GOF is supported by gun owners across the country and within this district

4.  My role is to work with members and supporters, industry partners, gun stores, shooting ranges, and other similar entities, in order to educate, empower and promote GOA's mission to protect, defend, and restore the Second Amendment.

5.  During the regular course of business in my employment with GOA and GOF, I am in routine contact with both individual gun owners and industry members within the firearms community.  I have had the opportunity to speak with many of GOA's and GOF's members and supporters from all across the United States, with respect to the impact of the Final Rule on these persons and entities.

6.  I have personal knowledge of myself, my activities, and my dealings with GOA's and GOF's members and supporters, as set out in the foregoing Complaint for Declaratory and Injunctive Relief.  If called on to testify, I would competently testify as to the matters stated herein.

7.  GOA's and GOF's members and supporters represent a diverse group of individuals and entities, consisting not only of individual gun owners and supporters of the Second Amendment, but also members of the firearms community and industry including, but not limited to: licensed firearm importers, licensed firearm manufacturers, licensed firearm dealers, licensed firearm collectors, special occupational taxpayer who deal in National Firearm Act ("NFA") regulated firearms, manufacturers of NFA firearms, including silencers, licensed gunsmiths, manufacturers, distributors and retailers of unregulated firearm parts (including "80% frames and receivers") and

solvent traps, and providers of technology, equipment, and software to manufacture homemade firearms.

8. GOA's and GOF's members and supporters also include recipients of ATF "classification letters" opining as to ATF's interpretation of various statutes, and providing ATF's position on the legal status of various products.  As of August 24, 2022, many of these classifications may be revoked by the Final Rule, "grandfathered" by the Final Rule, or changed by the Final Rule.

9. GOA's and GOF's members and supporters also include law-abiding gun owners across the country, who lawfully purchase, transfer, possess, own, customize, accessorize, and utilize all manner of firearms, including those regulated by both the National Firearms Act and the Gun Control Act.  Such persons include makers of homemade firearms (termed "privately made firearms" by the Final Rule) who purchase, transfer, possess, own, customize, accessorize, and utilize raw materials, firearm parts, 3D printers, and unfinished firearm frames and receivers in order lawfully to construct their own firearms.

10. In other words, GOA's and GOF's members and supporters are representative of those affected by the Final Rule, which has a sweeping and omnibus effect on the firearms community, including all of the individuals and activities mentioned above, and federal gun control law in general.

11. Indeed, for each of the portions of the Final Rule challenged in the Complaint, GOA/GOF has numerous members and supporters who will be irreparably harmed by the Final Rule, if it is allowed to go into effect on August 24, 2022.

12. Protection of the rights and interests advanced in the Complaint is germane to GOA/GOF's mission, which is to preserve and protect the Second Amendment and the rights of Americans to keep and bear arms, including against bureaucratic overreach.

13. GOA and GOF routinely litigate cases throughout the country on behalf of their members and supporters. For example, *see Gun Owners of America, Inc., et al., v. Merrick B. Garland*, No. 21-1215 (petition for certiorari pending).

14. In response to the ATF's Notice of Proposed Rulemaking in this matter, Plaintiffs GOA and GOF submitted comments on June 6, 2021 (Comment ID ATF-2021-0001-44678) available online at: https://downloads.regulations.gov/ATF-2021-0001-44678/attachment_1.pdf.

15. In reviewing the Final Rule, it is clear that it responds in various ways to GOA's and GOF's comments, and comments made by GOA's and GOF's members and supporters, and implements some of the suggestions made in the comments.

16. However, not all comments were addressed, and some of the Final Rule is completely different than what was proposed in the NPRM, meaning that GOA, GOF and their members and supporters did not receive a meaningful opportunity to provide input on some of the substantive provisions of what would become the Final Rule.

17. GOA's and GOF's members and supporters engage in various activities that are directly related to and impacted by the Final Rule.

18. Prior to the filing of this case, GOA and GOF have heard from numerous of their members and supporters, including many industry members, about how these persons and entities will be irreparably harmed if the Final Rule is permitted to go into effect.

19. Some of GOA's and GOF's members and supporters are non-licensed individuals who enjoy making their own firearms from parts they acquire either online at different retailers, or through retail purchase including at gun shows. Such members and supporters take these firearm parts, including unfinished frames or receivers, and manufacture them into firearms using their knowledge, skills, and abilities, along with various jigs, tools, instructions, etc.

20. But now, based on the provisions of the Final Rule, these members and supporters are fearful that they will not be able to purchase these firearm parts because of the Final Rule's treatment of unregulated firearm parts as "firearms," and because the Final Rule may either lead to the market for homemade firearm parts drying up (through companies who sell these products going out of business), or at minimum require invasive and costly serialization, recordkeeping, background checks, etc. to acquire parts that are not "firearms" under federal law.

21. Specifically, the Final Rule speaks about "conspiracy" charges against retailers selling unregulated firearms parts (*see also* GOA/GOF comments at page 25).

22. The Final Rule responds to these concerns about this vague ATF threat of "conspiracy" by with further vague threats, "reiterat[ing]" that charges for selling unregulated gun parts could be brought, including "conspiracy" and "aiding and abetting," claiming that "persons who manufacture and sell unassembled weapons or weapon parts kits in 'knockdown condition' (*i.e.*, unassembled but complete as to all component parts) cannot structure transactions … by working with others or structuring transactions to avoid the appearance that they are not commercially manufacturing and distributing firearms."  Final Rule at 24714.

23. If the Final Rule is allowed to go into effect, it will chill activity related to the homemade manufacture of firearms – activity which is otherwise lawful.  Based on the Final Rule's ambiguous threats, members and supporters of GOA and GOF are fearful in becoming the victims of an ATF prosecution for participating in what is entirely legal activity, by a government agency with unlimited funding to arrest them, seize their property, imprison them pending trial, and bankrupt them with legal fees.

24. Additionally, some of GOA/GOF's members and supporters, after completing their homemade firearms, obtain the services of business which apply "Cerakote" or various other

finishes to the firearms, and offer other services such as installing various accessories like sights, rings for scopes, and stocks, and perform other repair, cleaning, or maintenance on firearms.

25. Under the Final Rule, these personally made firearms suddenly will require serialization and recordkeeping by the company that simply, for example, applies a finish to a privately made firearm.

26. GOA's and GOF's members and supporters, who make their own firearms from parts they purchase, wish to be able to obtain the above services without being subjected to either added cost by forced serialization and recordkeeping, or the governmental infringement upon their exercise of constitutionally protected activity.

27. If the Final Rule is implemented, these members and supporters will be unable to exercise their Second Amendment rights to make homemade firearms for lawful purposes free from government oversight and control, and without being forced into a government-controlled system of firearm records, should their personally made firearm need repair, fitting, customization, or simply a paint job.

28. Likewise, members and supporters of GOA/GOF that include companies that apply these finishes or perform maintenance, repair, or customization must have a Federal Firearm License (FFL) in order simply to apply a coating to a firearm.  Under the Final Rule, these FFLs will be forced to serialize any personally made firearm that they acquire, as a condition of performing these services.  This serialization requirement will then lead to additional recordkeeping requirements, such as for simply painting a firearm, and will eventually lead to the turning over of these records of privately made firearms to the federal government, something that GOA and GOF's members and supporters do not wish to occur.

29. Similarly, GOA and GOF have heard from FFLs who are members and supporters who do not want to be required to serialize firearms as a condition of providing these services, for numerous reasons, including the additional paperwork, hassle of recordkeeping, risk of adverse ATF actions due to paperwork mistakes, or in the event the serialization process damages these firearms, etc.  In other words, these FFLs are concerned that firearms on which they are now required to engrave their information and about which they are now required to keep records will become a liability.

30. GOA and GOF's members and supporters wish to continue offering their gunsmithing services free from the onerous serialization and recordkeeping mandates contained in the Final Rule, but required by no federal statute.

31. Other members and supporters of GOA and GOF have received favorable classification letters from the ATF regarding unfinished frames or receivers, stating that ATF does not regulate such items, as they are not firearms.

32. However, the Final Rule purports to revoke classifications with respect to 80% frames and receivers, including those classifications issued to members and supporters of GOA and GOF.

33. Numerous other GOA and GOF members and supporters manufacture, distribute, and sell to the public items which are unregulated by federal law, including incomplete and unfinished frames and receivers, firearm parts, and even raw materials (such as blocks of aluminum), along with "templates, jigs, molds, equipment, tools, instructions, guides, or marketing materials" to guide law-abiding gun owners as they manufacture these unfinished products into functioning firearms.

34. These entities also sell or have sold what the Final Rule now terms "weapons parts kits," which are not firearms because they contain no part that is a firearm frame or receiver.

35. Indeed, companies who are members or supporters of GOA or GOF have received numerous classification letters from ATF, specifically stating the products they manufacture and sell are ***not*** firearms and are ***not*** regulated by federal law.  These companies have reasonably acted in reliance on those representations and findings by the agency, that the Final Rule apparently now would reverse and overrule.

36. If the Final Rule is allowed to take effect, it would transform many of these heretofore lawful and unregulated 80% products into "firearms," even though they are not classified as such under any statute Congress enacted, nor any reasonable "interpretation" thereof.

37. This bureaucratic regulation would require these manufacturers, distributors, and retailers to obtain federal firearm licenses in order to continue operation, along with requiring serialization of these unfinished frames and receivers, and mandating a background check and federal paperwork for those who purchase them.

38. Other products produced and sold by members and supporters of GOA/GOF, which are not banned outright by the Final Rule, would be thrown into legal limbo, due to the uncertainty of application of the vague and arbitrary tests and standards the Final Rule promulgates.  These clear-as-mud standards subject these entities, their employees, their suppliers, and their customers to arbitrary and capricious actions by the ATF, including possible criminal prosecution (and, short of that, persecution).

39. Various of GOA's industry supporters have indicated that, if the Final Rule takes effect, they no longer will be able to continue business operations, unable to market and sell many, most, or ***all*** of the products they currently offer.

40. As a result, numerous businesses will be severely impacted, if not entirely destroyed by ATF's regulatory fiat. Tens (if not hundreds) of millions of dollars of sales could be lost, and dozens (if not hundreds) of jobs could be lost.

41. On the flip side of that coin, GOA and GOF's members and supporters will have their Second Amendment rights to acquire arms severely infringed. Many of GOA/GOF's members and supporters lawfully purchase items the Final Rule purports now to regulate, and use them to manufacture their own homemade firearms.

42. Due to the Final Rule's various definitions, GOA's and GOF's members and supporters will be unable to know and left to guess at which "firearm" parts are regulated by the ATF, and thus, subject to all the requirements of the Gun Control Act, including paperwork, background checks and serial numbers.

43. Additionally, the Final Rule purports to regulate innocuous household objects in a way that will cause GOA's and GOF's members and supporters to subject themselves to potential violations of the National Firearms Act, as the Final Rule deletes language from the NPRM, specifically "as designed," which eliminates both design and intent from the statute. Most persons, including members and supporters of GOA/GOF, possess common household items that, in theory, *could* be manufactured into a suppressor.

44. GOA's and GOF's members and supporters also manufacture their own suppressors in compliance with the NFA's requirements of serialization, paying a $200 tax, and registration in the National Firearms Registration and Transfer Record ("NFRTR").

45. GOA and GOF have spoken with their members and supporters who are now fearful that, in seeking to lawfully manufacture their own registered NFA suppressor, they could be considered

in violation of the Final Rule for simply acquiring parts to make their own suppressor, even in compliance with the NFA.

46. Since the Final Rule removes the element of "intent" from the statute, these members and supporters have expressed that they are less likely, and some unwilling, to even attempt to make their own suppressors.

47. Some of these members and supporters have previously taken something known as a "solvent trap" and repurposed such objects as a compliant and registered suppressor. This entails filing a Form 1 (Application to Make and Register a Firearm) with the ATF and paying a $200 tax.

48. This process is often cheaper than buying a pre-manufactured suppressor from a dealer, but requires the same background checks, a similar form, and the same amount of tax.

49. However, the definitions under the Final Rule obliterate such persons' ability to manufacture a lawful suppressor from a solvent trap. In fact, the ATF's NFA Branch has even threatened some Form 1 applicants, including for some of GOA and GOF's members and supporters who have contacted us seeking guidance. ATF has claimed that "it is unlawful for you to possess a silencer made or transferred in violation of the NFA." A copy of a denial one of our members received is attached to the Complaint as Exhibit "38."

50. ATF has made further statements that a Form 1 applicant could be accused of perjury in filing a Form 1 because the maker of that suppressor must certify, under penalties of perjury, that he or she is the "maker" of the suppressor.

51. These implicit and explicit threats chill members and supporters of GOA and GOF from making their own suppressors, even when done so according to methods which ATF has previously approved, and even when in compliance with the NFA's registration and tax payment provisions.

52. The Final Rule also purports to codify and change the classification system that ATF uses to "classify" various firearms.

53. Numerous members and supporters of GOA and GOF have sought classification letters from the ATF with respect to various firearms and products they intend to either sell or make for themselves.

54. The Final Rule now mandates that a classification request be "executed under the penalties of perjury" for simply asking the ATF to classify an item under the GCA or NFA, but does not provide any legal basis for that demand.

55. Members and supporters of GOA and GOF have reported being very concerned about this new requirement, as they believe it is nothing more than an attempt by ATF to discourage product submissions and create more technical paperwork violations which can lead to selective prosecution by the agency of making a "false statement" on government paperwork that no statute requires.

56. GOA and GOF explicitly commented on the "perjury" requirement during the comment period. *See* Complaint Exhibit "33" at 45. However, the Final Rule does not appear to have considered or responded to these comments.

57. The Final Rule also makes the classification process entirely discretionary, which defeats the purpose of submitting and receiving a classification from the ATF.

58. The Final Rule's unlawful and inappropriate codification of ATF's flawed classification system will irreparably harm the members and supporters of GOA and GOF in numerous ways.

59. First, as ATF reserves to itself the decision whether to issue a classification letter, this system will permit ATF to act arbitrarily and capriciously against the members and supporters of GOA and GOF, as has already occurred.

60. Second, ATF's refusal to examine items that do not "include a firearm" leaves the homemade firearm industry in the lurch, because incomplete and unfinished 80% frames and receivers, along with firearm parts, jigs, templates, tools, and instructions are not "firearms" under federal law. Thus, ATF may decide not to examine these products (although inviting the industry to submit such products for examination).

61. Third, members and supporters of GOA and GOF have been on the receiving end of ATF's conflicting classification letters, where the agency adopts diametric positions about identical items. Codifying such a system will irreparably harm these persons and entities.

62. Fourth, the Final Rule's requirement that product samples be submitted under penalty of perjury creates a deterrent effect on (and potential criminal liability for) those who would ask ATF to examine their products, as it is entirely unclear from the Final Rule what a product submitter is being asked to certify, and the legal authority for ATF to make such a demand.

63. As noted above, members and supporters of GOA and GOF have reported having classification requests (also called submission samples) pending with ATF for as long as four years.

64. For example, one of GOA's and GOF's members is a manufacturer and retailer of 80% frames and receivers, along with other firearm parts, and has multiple pending classification requests to the ATF.

65. That member wants to continue to sell 80% frames and receivers, currently not regulated by federal law.

66. That member is confused as to what parts the company can and cannot sell, due to the vague way the Defendants wrote the Final Rule and the various crimes the agency claims can now be brought against individuals for allegedly "structuring" sales.

67. Because the Final Rule seeks to rewrite federal statutory law with respect to what is and is not a "firearm," this member (and other of GOA and GOF's members and supporters in similar situations) will be unable to continue business after implementation of the Final Rule, and will be required to cease doing business unless an FFL is obtained, records are kept, serialization is performed, and background checks are conducted.

68. That is not a tenable business strategy for some.  One GOA member estimates that the business will lose millions of dollars in annual sales and will be forced to lay off the employees, should the Final Rule take effect.

69. Another member of GOA and GOF is an inventor of firearms.

70. This individual described how his business will be impacted by the Final Rule, requiring him to engrave his business information on firearms his business did not manufacture, which he fears will open himself up to liability.  Further, he fears that the ATF will use his business license number (which he will be required to engrave on firearms he did not make) as means to harass him during trace requests, and possibly use an increase in trace requests to shut his business down.

71. Members and supporters of GOA and GOF who are federal firearm licensees also have raised concerns about the Final Rule's new requirement to keep business records indefinitely, and the Final Rule's requirement to one day send all of their records to ATF's out-of-business records center.

72. For those reasons, every one of GOA/GOF's members and supporters who possess firearms – not only privately made firearms but also those acquired from licensed dealers – will be irreparably harmed if the Final Rule is implemented.

I, Kailey Patterson, certify under penalty of perjury that the foregoing is true and correct.

| | |
|---|---|
| 2 July 2022 | _Kailey Patterson_ (signature) |
| **DATE** | **Kailey Patterson** |