<u>United States v. Roh</u>, Case No. SACR 14-167 JVS

<u>Tentative Minute Order re Post Trial Motions</u>

On October 2, 2014, Joseph Roh ("Roh") was indicted for violating the provisions of the Gun Control Act by willfully engaging in the illegal manufacture of firearms, 18 U.S.C. § 922(a)(1)(A). (Docket No. 1.)  The parties waived jury (Docket No. **X**), and the matter was tried to the Court beginning February 20-23, 2018. (<u>See</u> Docket Nos. 118, 120-22.)  At the conclusion of evidence, the Court set a briefing schedule for Roh's post trial motion for acquittal and dismissal (Docket No. 122), and subsequently set a date for argument on the Motion and closing arguments (Docket No. 142).

Now before the Court are Roh's post trial motions.  He moves for acquittal under Rule 29 of the Federal Rules of Criminal Procedure and for dismissal on grounds on unconstitutional vagueness. (Docket Nos. 124, 139.)  The Government has filed an opposition (Docket No. 132), and Roh has replied (Docket No 137).

For the reasons set forth below, the Court grants in part and denies in part the Motion.

I.  <u>The Indictment.</u>

The single-count Indictment charges that Roh "not being licensed as an importer, manufacturer, or dealer in firearms, willfully engaged in the business or manufacturing and dealing firearms, to wit, hundreds of AR-15-type lower receivers, completed pistols, and completed rifles" in violation of 18 U.S.C. § 922(a)(1)(A). (Docket No. 1.)  The Indictment tracks the language of the statute:

> It shall be unlawful--
> (1) for any person--
> > (A) except a licensed importer, licensed manufacturer, or licensed dealer, to engage in the business of importing, manufacturing, or dealing in firearms, or in the course of such business to ship, transport, or receive any firearm in interstate. or foreign commerce;

1

Exhibit "5"

(18 U.S.C. § 922(a)(1)(A).)

The term "firearm" is defined by statute and further defined by regulations issued by the Bureau of Alcohol, Tobacco, and Firearms. The statute provides:

> The term "firearm" means (A) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; (B) <u>the frame or receiver of any such weapon</u>; (C) any firearm muffler or firearm silencer; or (D) any destructive device. Such term does not include an antique firearm.

(18 U.S.C. § 921(a)(3); emphasis supplied.) The regulations define a receiver:

> Firearm frame or receiver. That part of a firearm which provides housing for the hammer, bolt or breechblock, and firing mechanism, and which is usually threaded at its forward portion to receive the barrel.

(27 C.F.R. § 478.11.)

The core dispute here is whether an unfinished AR-15 receiver constitutes a firearm under the statute and regulations.

II.   <u>Legal Standards.</u>

Rule 29 of the Federal Rules of Criminal Procedure provides in part: "After the government closes its evidence or after the close of all the evidence, the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." (Fed. R. Crim. P. 29(a).) On a Rule 29 motion, "The court, after viewing the evidence in the light most favorably to the government, must determine whether the jury could reasonably find the defendant guilty beyond a reasonable doubt." <u>United States v. Bernhardt</u>, 840 F.2d 1441, 1448 (9th Cir. 1988).

Criminal statutes must give fair notice of their scope:

> It is a basic principle of due process that <u>an enactment is void for vagueness if its prohibitions are not clearly defined</u>. Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, <u>we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly</u>. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them.

<u>Grayned v. City of Rockford</u>, 408 U.S. 104, 108 (1972) (emphasis supplied). More stringent standards are applied where the vagueness challenge involves a criminal statute or the exercise of constitutional rights. <u>Village of Hoffman Estates v. Flipside Hoffman Estates, Inc.</u>, 455 U.S. 489, 498-99 (1982); <u>McCormack v. Herzon</u>, 788 F.3d 1017, 1031(9th Cir. 2015).

III.   <u>Discussion.</u>

Roh operated Rogh Industries, a machine shop which catered to gun enthusiasts. Part of his operation consisted in manufacturing AR-15 semi-automatic assault rifles. One of the steps is the manufacture of a receiver. Rather than initiating the process of machining a receiver, Roh had his customers push a button on the milling machine which initiated the process. But for that one step, Roh performed all of the steps in manufacturing completed AR-15s.

The correspondence and testimony establish that Roh was informed of ATF's position that his operations, including the manufacture of finished receivers, constituted unlicensed manufacture of firearms. In response to correspondence from Roh, the AFT examined samples of machined AR-15 parts and advised that they were not "classified as a 'firearm." (Ex. 132.) A year later, the ATF wrote with regard to receivers that they would be "classified by our Branch as a 'firearm.'" (Ex. 134, p. 4.)[1] On December 23, 2013, the ATF sent Roh a cease and desist letter informing him that his operations constituted the

---

[1]There is a dispute as to whether this letter was ever sent and received. (<u>See</u> Tr. ) For present purposes, the Court finds that Roh was on notice that the ATF "classified" finished receivers as "firearms."

3

illegal unlicensed manufacture of firearms. (Ex. 126.) Roh signed a written acknowledgment of the notice. (Id., p. 2.)

There is no dispute that Roh does not have a license for firearms manufacturing.

The Government has two theories: Roh's manufacturing of receivers violated the statute, and separately Roh sold firearms. The Court deal with each theory.

    A.    <u>Receivers.</u>

The definition of receiver under the ATF regulations requires four component: a "housing for the <u>hammer, bolt or breechblock, and firing mechanism</u>, and which is <u>usually threaded at its forward portion to receive the barrel</u>." (27 C.F.R. § 478.11; emphasis supplied.) The evidence at trial was uncontroverted that a finished AR-15 receiver does not contain a bolt or breechblock and is not threaded to receive the barrel. (<u>E.g.</u>, Tr. Feb. 21, 2018, pp. 111-13 (Jackson); Tr. Feb. 24, 2018, pp. 65-67 (Hoffman).) Indeed, the Government concedes the point in its opposition. (Opposition, p. 23.) The plain conclusion is that the finished receiver is not a firearm.

The Government's theory of conviction rests on proposition that the AFT had "classified" finished receivers as firearms, notwithstanding the conflict with the definition published by the ATF in its regulations. Examination of Government expert Daniel Hoffman revealed that there is no "objective classification scheme or system in place." (Tr. Feb. 24, 2018, p. 44.) ATF personnel simply make a determination in response to individual inquiries. (<u>Id.</u>) Usually, there is no consultation with ATF counsel. (<u>Id.</u>, p. 50.) More significant for present purposes is that there is no way for the public to learn the particulars of the classification system. (<u>Id.</u>, pp. 44-45, 55.) The only way a person can learn of an AFT classification is to make direct contact with the AFT. (<u>Id.</u>, pp. 48-49, 55-56.)

It is clear that the ATF's classification of articles as firearm does not comply with the rule making process which brought into effect the public definition for firearm found in Section 478.11. The rule making process under

Administrative Procedures Act, 5 U.S.C. § 551, requires promulgation of a rule and eventual publication of the rule in the Federal Register.  5 U.S.C. § 552(a).

United States v. Picciotto, 875 F.2d 345 (D.C. Cir. 1989), illustrates the flaw in seeking criminal prosecution on the basis of an unpublished classification.  There the Park Service had adopted regulations, but informally added "additional conditions."  The defendant was prosecuted for violating one of those conditions.  The Court rejected the prosecution:

> A rule which is subject to the APA's procedural requirements, but was adopted without them, is invalid. Certainly, a criminal prosecution founded on an agency rule should be held to the strict letter of the APA.

(Id. at 346; internal citation deleted.)  Other circuits have similarly recognized that criminal liability cannot be imposed where the agency has failed to comply with APA's procedures, and therefore had not given fair notice.  United States v. Cain, 583 F.3d 408, 420, 422-23 (6th Cir. 2009) (sex offender regulations); United States v. Reynolds, 710 F.3d 498 (3d Cir 2013) (same); United States v. Valverde, 628 F.3d 1159, 1168-69 (9th Cir. 2010).

The Government would distinguish Picciotto on the ground that the Park Service had in fact made a substantive change.  (Opposition, pp. 23-35.)  But that is the point: By deleting certain requirements for a receiver, the AFT made a substantive change in the regulation.

The Government contends that Roh knew that AR-15 lower receivers constituted "receivers."  (Id., pp. 36-38.)  He certainly knew through correspondence with the AFT and visits that it was the ATF's position that the lower receiver were "receivers."  But his knowledge of the AFT's position does not give ATF's unsupported position the force of law.  Significantly, in its discussion of Roh's knowledge it cites neither case law nor statutory authority.

The Court rejects the Government's position here with respect to receiver as a mere and permissible interpretation.  (Opposition, p. 31.)  There is not simply tension between the Government's position and Section 478.11; there is a disconnect.  (See id., p. 32.)  The Government counters with Cabais v. Egger,

5

690 F.2d 234, 238 (D.C. Cir. 1982), for the proposition that a position may nevertheless be a valid interpretation even if it contradicts the statute. But there is a qualifier: The interpretation must reasonable.  (Id. at 238 n.10, 239.)  In fact, the D.C. Circuit rejected the the Labor Department's interpretation of the statute in Cabais where it its interpretation imposed on the states a formula for determining individual pension contribution not found in the statute.  Here, the converse is true: ATF is reading out of the regulation express requirements for a receiver.  That is not reasonable.²

       In United States v. Evans, 712 F. Supp. 1435, (D. Mont. 1989), aff'd 928 F.2d 858 (9th Cir. 1991) the court held that a formal regulation was not necessary to give content to the term "any combination of parts from which a machine gun can be assembled."  The term  "combination" was enacted by amendment, and evidenced a Congressional intent to cover whatever parts were used in the final make up of the machine gun.  (Id. at 1438-39.)  Unlike the statute in Evans, no broad interpretation can support an interpretation which fails to take into account the express components of a receiver.  (Id. at 1443-44.)  The ATF's classification here cannot be accepted as a mere interpretation where that interpretation is wholly contradictory to its existing regulations.

       ATF's notices to Roh were notices of its classification of receivers.

       The Court finds that Roh's activities with respect to the production of finished receivers were not within the scope of the statute or the ATF regulatory definition. Therefore, Roh did not violate the law by manufacturing receivers.  The Court further finds that with respect to manufacturing receivers, the statue and regulation are unconstitutionally vague as applied here.  No reasonable person would understand that a part constitutes a receiver where it lacks the components specified in the regulation.

       In addition, the Court finds that when applied to include finished lower receivers, Section 478.11 is unconstitutionally vague.  Grayned, 408 U.S. at 108.  This conclusion is unchanged and even reinforced when one considers the Government's argument that the preamble to the section supports its position. )

---

²The Government's recitation of "strawman" cases is inapposite. (Opposition, pp. 32-33, citing e.g. United States v. Nelson, 221 F.3d 1206, 1210 (11th Cir. 2000).

(Opposition, pp. .)
The definitions in the section are applicable "[w]hen used in this part and in forms prescribed under this part, where not otherwise distinctly expressed or manifestly incompatible with the intent thereof." (27 C.F.R. § 478.11, Preamble.)  At least for criminal purposes, putting a defendant to discern whether a definition is "manifestly incompatible with the intent" of the regulation is a far cry from giving fair notice of the scope of the regulation.³

In <u>United States v. Jiminez</u>, 191 F. Supp. 3d 1038, 1045 (N.D. Cal. 2016), the court found that the definition of receiver in a parallel provision of the regulations, 27 C.F.R. §479.11, was unconstitutionally vague.  Just as here, the court focused on the language of the regulation:

> Tellingly, the Government makes no effort to parse the statutes or the CFR for proof of notice or clear standards. In effect, it concedes that the plain language of the law does not answer the vagueness challenge. <u>This is tantamount to acknowledging that even if Jimenez had read the rules and regulations, he could not have known that the lower receiver of the AR-15 would be covered by them.</u>  That alone is a strong blow against the Government's position.

(<u>Id.</u> at 1041; emphasis supplied.)  So too here.  Moreover, the <u>Jiminez</u> court specifically rejected the argument that the need to strengthen law enforcement overrode the vagueness defect.⁴  (<u>Id.</u> at 1044.)

Roh is entitled to acquittal of the charges here to the extent they are based on a definition of receiver supported only by the ATF's so-called classification.  As applied here, Section 479.11 is void for vagueness.

### B. <u>Assembly of Firearms.</u>

---

³In view of the Court's analysis, the Court finds that it is unnecessary to reopen the record to take the testimony of ATF counsel, and rejects Roh's request.  (<u>See</u> Rebuttal, pp. 17-18.)

⁴The Government suggests that <u>Jiminez</u> left room for the possibility that a different record in a different case might show "adequate notice to the defendant or vitiate a vagueness challenge on other grounds." (Opposition, pp. 27-28 n.9, <u>citing</u> <u>Jiminez</u>, 191 F.3d Supp. at 1044.)  The Court has already found that notice of an unsupported classification can not rise to such notice.

7

The Court focuses more broadly on Roh's activities. There is no question that he manufactured completed AR-15s. Dr. Frank Juste's purchase was typical. He paid for the purchase and assembly of his AR-15. (Tr. Feb. 21, 2018, pp. 118-20.) The parties stipulated that approximately 25 percent of Roh's customers received a completed AR-15 or a completed pistol. (Docket No. 101, p. 5.)[5]

Roh's contention that the communications between ATF and Roh focused "exclusively" on lower receiver is mistaken, and incorrectly assumes that ATF was required to inform him of the law. (See Reply, pp. 24-25.) The December 2013 cease-and-desist letter was directed to all of Roh's operations. (Ex. 126.) It focused specifically on how the rifles were manufactured, including customer performance of some steps. (Id., p. 1, third paragraph.) Other than arguing a lack of notice, Roh does not contest the showing her that he in fact manufactured and sold completed firearms.

Apart from the AR-15 sales, Rho sold Agent Jackson a pistol in violation of California law.

This conduct, apart from the debate over receivers, is sufficient to support a finding beyond a reasonable doubt that Roh wilfully engaged in the unlicensed manufacture and sale of firearms in violation of 18 U.S.C. 922(a)(1)(A).

III.   Conclusion.

The Court grants the Motion for Acquittal with respect to the manufacture of AR-15 receivers, but otherwise denies the Motion.

---

[5]See also Customer Appointment Records, Exs. 415, 470B, 470D.