


Docket No. ATF 2021R-05

"Definition of 'Frame or Receiver' and Identification of Firearms"

**Comments of**

**GUN OWNERS OF AMERICA, INC.**

**and**

**GUN OWNERS FOUNDATION**

8001 Forbes Place, Suite 202

Springfield, VA 22151

June 4, 2021

Exhibit "33"

1

# Table of Contents

ATF Rulemaking ..................................................................................................................... 3

Identity of Commenters ....................................................................................................... 3

Summary of Comments ......................................................................................................... 3

Comments on Proposed Rule .............................................................................................. 10

    I.    The Proposed Rule Disregards the Gun Control Act and Seeks to Re-Enact the Repealed Federal Firearms Act ........................................................................................................................ 10

        A.    Frame or Receiver. ............................................................................................... 10

        B.    ATF Elevates Perceived Intent Over the Statutory Text. ..................................... 12

        C.    ATF Blatantly Proposes to Expand the Statutory Definition of "Firearm" to Include Items that Are Not Firearms, that Have Never Been Firearms, and Which Congress Never Intended to Be Considered Firearms. ........................................................................................ 24

        D.    ATF Proposes to Expand the Statutory Definition of "Silencer." .............................. 32

    II.    The GCA Does Not Regulate "Privately Made Firearms," Yet ATF Seeks to Create Entirely New Regulatory Requirements and Even New Federal Crimes. ................................................... 36

        A.    Privately Made Firearm. ........................................................................................ 36

    III.    ATF Attempts to Lull the Industry into a False Sense of Complacency ......................... 41

    IV.    ATF Reserves to Itself the Power to Act Arbitrarily and Capriciously. ......................... 43

    V.    ATF Is Prohibited from Creating a National Gun Registry. .......................................... 46

CONCLUSION ................................................................................................................... 47

**ATF Rulemaking**

On May 21, 2021, ATF published a "Notice of Proposed Rulemaking" in the Federal Register, entitled "Definition of 'Frame or Receiver' and Identification of Firearms," 2021R–05, 86 *Fed. Reg.* 27720 ("PR" or "Proposed Rule"). ATF has sought public comment on its proposal by August 19, 2021.

**Identity of Commenters**

These comments are submitted on behalf of Gun Owners of America, Inc. and Gun Owners Foundation.

Gun Owners of America, Inc. ("GOA") is organized and operated as a nonprofit membership organization that is exempt from federal income taxes under Section 501(c)(4) of the U.S. Internal Revenue Code. GOA was formed in 1976 to preserve and defend the Second Amendment rights of gun owners, and has become one of the nation's leading Second Amendment advocacy organizations, with more than two million members and supporters nationwide. Gun Owners Foundation ("GOF") is organized and operated as a nonprofit legal defense and educational foundation that is exempt from federal income taxes under Section 501(c)(3) of the U.S. Internal Revenue Code. GOF is supported by gun owners across the country.

**Summary of Comments**

Time and again, ATF, through Proposed Rulemaking, has sought to rewrite the text of federal firearms law in order to suit the agency's anti-gun political agenda, apparently seeking to revert to the congressionally repealed regulation of "all firearm parts" under the Federal Firearms Act of 1938.

First, ATF rewrites the statutory term "the frame or receiver" so that it is now possible for a single firearm to have numerous frames and receivers. ATF proposes to define "frame or receiver" as any of several parts that house what the agency terms a "fire control component." Yet under ATF's unworkable explanation, almost every single part of a firearm constitutes a "fire control component," with the effect that popular firearms such as the AR-15 might now include as many as 10 frames and receivers. Under the new regime ushered in by this rulemaking, ATF could even go so far as to wave its magic wand and claim that firearm barrels and box magazines now constitute firearms.

In proposing this new system, ATF repudiates its existing regulatory definition of "the frame or receiver," claiming that this regulation has never actually applied to anything, and admitting that the agency has for decades simply ignored it – *deliberately misinterpreting* and misapplying its own rule, even while chiding federal courts for not participating in the charade.

Second, without any statutory authority, ATF's Proposed Rule targets for extinction popular DIY homemade firearms, often sold as unfinished and unmanufactured parts or kits which are commonly referred to as "80% frames or receivers". ATF repudiates all prior guidance and classification letters on the subject, and rewrites the statute to create an entirely new category termed "weapons parts kits" which ATF claims are firearms, even though they are not even fully manufactured, and contain no actual frame or receiver and are, as sold, incapable of discharging a cartridge.

Whereas in the past, ATF pointed to specific milling operations which "go too far" and turn unregulated objects into firearms, ATF now proposes to replace those well-established standards with no standard at all – except ATF's arbitrary discretion – employing nonsense

terminology such as the "critical line crossed" test, the "substantial step taken" test, and the "critical stage" test. Of course, no one could possibly have any idea what any of that means.

ATF attempts to explain what it means by claiming that an item becomes a firearm when it "may readily be completed" – defining "readily" by changing the statutory term "readily be converted" to "readily be assembled, completed, converted, or restored." To preserve its unrestricted authority to impose arbitrary standards on a case-by-case basis, ATF injects an additional half dozen vague adjectives and adverbs which are inherently malleable, flexible, vague, standardless, and open to infinite interpretation.

Then, to provide further "clarification" of its clarification, ATF provides an *additional* eight-part test with even more vague and standardless concepts such as "how long" and "how difficult." Par for the course, ATF never explains what any of this means. As icing on the cake, ATF then adds *another* seven types of items it may consider to determine if an item is a firearm, such as "instructions" and "equipment," but does not explain how these factors would be considered. ATF thus has created a definition, within a definition, within a definition, within a statutory term. But ATF doesn't stop there. Moving even further down the rabbit hole of absurdity, the agency offers the famous "looks like a duck test." ATF opines that items which are "identifiable as an unfinished component part" are firearms regardless of functionality or even their stage of completeness. Therefore, if something has the outward appearance of a firearm, then it is a firearm.

Apparently recognizing the confusion inherent in its tests, ATF promises that it won't arrest anyone for possessing a solid block of metal – the "primordial state" test. Scout's honor. Of course, if the owner of the block of metal also dared to possess a drill bit, or if the block of metal had a drawing of a gun on it, then it is *definitely* a firearm.

It has yet to be seen whether, under this new standard, users of 3D printers will need to pass a background check before they can purchase spools of plastic filament from licensed gun dealers. After all, Legos can be dangerous if they fall into the wrong hands.



Third, the Proposed Rule targets "silencers" for additional regulation. Hardly a surprise, ATF first seeks to rewrite the definition of silencer, claiming that one silencer might contain multiple "frames and receivers" (a term Congress did not use when defining silencers), and that each such part must be marked and serialized. ATF doesn't stop to consider whether this is even possible for modular suppressors.

Deceptively marketing its changes as a boon to the silencer industry, ATF claims to resolve a point of alleged "concern" and "confusion" in the marketplace. ATF offers as a carrot the promise that it will not require each tiny part of a suppressor to be marked and serialized – seemingly oblivious to the fact that the statute has *never permitted* this, ATF has *never required* this, and manufacturers have *never done* this. Lurking just inside this Trojan horse lies the true intent of ATF's proposed changes, which is to eliminate the sale of increasingly popular items known as "solvent traps" and "fuel filters," thereby eliminating the ability of most gun owners to lawfully manufacture their own suppressor after receiving an approved Form 1.

Again, ATF proposes to rewrite the statute, deleting the language "parts designed and intended" and replacing it with "parts necessary to function as designed" – because apparently intent no longer matters. Indeed, ATF claims that an item is a silencer if it "contains all the component parts necessary" to build a suppressor, regardless of whether they were ever intended

or possessed for that use, and regardless of whether they are even "operable" once assembled. In other words, anyone who changes his own oil is now a felon.

Fourth, ATF proposes to create a new definition to regulate "privately made firearms," ("PMF") even though federal law does not regulate homemade guns. ATF claims that the Gun Control Act "required all firearms to be serialized," a recklessly false statement. In order to accomplish this illegitimate purpose of serializing "all firearms," the Proposed Rule would require PMFs to be serialized and recorded any time an FFL lays hands on one, rewriting and greatly expanding the statutory requirements that only "manufacturers" and "importers" (not all FFLs) must mark guns they "manufacture" or "import" (not all guns they "acquire").

To enforce this new serialization, ATF proposes to create the new federal crime of obliterating a PMF serial number – a serial number that the statute never required in the first place. And, to support its creation of a new industry to serialize privately made firearms, ATF creates a new category of "dealer-gunsmith" who will mark PMFs – both rewriting the statute and reversing longstanding agency guidance that a person doesn't need an FFL to engrave firearms. Of course, there is a reason for ATF forcing engravers to become licensed – ATF can then require these new FFLs to record information about every firearm they serialize, even if they do not keep a firearm overnight or take it into their inventory. This reverses nearly 45 years of ATF separate guidance that no recordation of firearms is required if the work is done the same day or while the customer waits.

Fifth, ATF attempts to lull the firearms industry into a false sense of complacency, promising that certain firearms may continue to be marked and serialized the way they currently are marked and serialized. But when the fine print is examined, that protection only applies to the same "design and configuration," meaning if a manufacturer changes anything – perhaps

something as small as the color of the stock or brand of flash hider offered on a particular model – the firearm might no longer be exempted from the Proposed Rule, meaning every ATF-defined frame and receiver would need to be serialized. Once again, ATF's promises to the industry ring hollow.

Sixth, ATF proposes to codify the agency's made-up and horribly flawed "classification letter" system, whereby members of the industry and the gun community submit samples in exchange for ATF's yea or nay as to the legality of a particular product. Yet it is widely known that this system, never authorized by Congress, has led to countless, secret, widely conflicting, and ever-changing opinions issued by ATF examiners. Those examiners receive no formal scientific or mechanical training, follow no standard operating procedures, do not employ the scientific method, and do not even bother to keep track of past work, leading to scenarios where the very same examiner can contradict himself while reviewing virtually identical products.

Making this proposal even more egregious, ATF seeks to defend its right to refuse to respond to submissions by the industry, preserving the agency's prerogative to act arbitrarily and capriciously – picking and choosing to whom and regarding what it will issue a classification letter, while leaving disfavored companies and products hanging in legal limbo for years upon end.

Finally, the combination of ATF's proposals gives the agency the ability to create a prohibited National Gun Registry: first, by declaring numerous non-firearm gun parts to be firearms which must then be serialized and transferred by dealers on a Form 4473 after a background check; second, by requiring homemade firearms to be serialized and registered whenever they come into the hands of an FFL; and third, by requiring dealers to keep all of these

records in perpetuity, or else transfer them to ATF for scanning and digitization into the agency's centralized database.

In sum, the Proposed Rule constitutes a gross overreach by ATF, purporting to greatly expand the arbitrary powers wielded by the agency via bureaucratic fiat rather than congressional authorization, to the detriment of the firearms industry and gun owners nationwide. Nearly every aspect of the Proposed Rule is either arbitrary and capricious, in excess of the agency's jurisdiction, or in conflict with either statute or constitutional right. Often, it is all of the above. Numerous times, the Proposed Rule purports to blatantly rewrite federal law to suit ATF's agenda. Nearly a dozen times, the Proposed Rule sets out unclear, ill-defined, and ambiguous multi-part tests and standards, each as malleable as mercury, and which seem carefully designed to provide minimum clarity to gun owners and the industry while preserving maximum flexibility to the agency to act based on impulse and whim.

To be sure, ATF may not be planning to take every horrible anti-gun action discussed below but, as with statutes Congress enacts, the point is not what ATF has in mind, but rather what is authorized and permissible under text of the regulations it proposes to enact. Virtually no part of the Proposed Rule has any legal authorization. Instead, the Proposed Rule usurps Congressional power at every turn and would cause great harm to law abiding gun owners and the firearms industry alike. For those reasons, the entire Proposed Rule should be withdrawn. If ATF fails to withdraw the Proposed Rule, GOA and GOF stand ready to challenge the agency's resulting lawless actions every step of the way.

### Comments on Proposed Rule

I.      **The Proposed Rule Disregards the Gun Control Act and Seeks to Re-Enact the Repealed Federal Firearms Act.**

The Proposed Rule ("PR") notes that, "prior to passage of the [Gun Control Act of 1968], the Federal Firearms Act of 1938 ('FFA') regulated" not only firearms but also "all firearm parts" – "*any part or parts of such weapon*." PR at 27720 (italics original). ATF admits that the FFA was repealed and replaced with the Gun Control Act of 1968 ("GCA"), in part because "Congress recognized that [it] was impractical" to "treat each small part of a firearm as if it were a weapon," and thus "[t]he revised [statutory] definition substitutes the words 'frame or receiver' for the words 'any part or parts.'" *Id., see also* 18 U.S.C. Section 921(a)(3). Yet although in one breath recognizing that the GCA was designed to scale back the FFA's regulation of all firearm parts, in the next breath ATF's PR announces the agency's intent to revert to the repudiated FFA scheme, by regulating "firearm parts" that clearly do not constitute "the frame or receiver" of a firearm.

   **A.  Frame or Receiver.**

      **1.  The Proposed Rule Ignores the Statutory Text.**

In seeking to regulate "firearm parts" as firearms, the PR ignores the statutory text. As noted above, Section 921(a)(3) defines "firearm" to include "the frame or receiver of any such weapon." This simple language provides **no fewer than four clues** that ATF's PR has missed the mark. Notably:

- Section 921(a)(3) uses the singular rather than the plural – "frame" or "receiver" rather than "frames" and "receivers;"
- Section 921(a)(3) uses the word "or" rather than the word "and," indicating a choice of one between two alternatives;
- Section 921(a)(3) begins with the definite article "the," indicating and emphasizing a particular and singular object; and
- Section 921(a)(3)'s language "of any such weapon" indicates that "the frame or receiver" is a component subpart of a "firearm," and is not separate therefrom.

Thus, the clear language of Section 921(a)(3) indicates that Congress unambiguously intended each firearm would contain *either one* frame *or one* receiver.

For many years, ATF followed the statute as written. Indeed, existing ATF regulations define the "firearm frame or receiver" in the *singular*, to be "[t]hat ***part*** of a firearm which provides housing for the hammer, bolt or breechblock, and firing mechanism, and which is usually threaded at its forward portion to receive the barrel," again indicating that a firearm has but *one* frame *or* receiver. 27 C.F.R. 478.11 (emphasis added). Moreover, the PR admits that, to date, firearms have had one "portion of a firearm" that is the "necessary component of the weapon" that is "the frame or receiver." PR at 27721. *See also* at 27720 (the "structural component of a firearm…."); *United States v. Thomas*, 2019 U.S. Dist. LEXIS 147264, *17-18 (D.D.C. Aug. 29, 2019) ("the government's expert witness from [ATF] testified at the hearing … 'the frame or receiver is *the central part* of the firearm,' … and is the '*core component* of the firearm that all the other parts are attached to.'") (emphasis added).

However, ATF apparently now has decided to disregard the statutory language, the clear intent of Congress which enacted it, and the agency's longstanding prior regulation in line with the statute. In fact, the PR blatantly admits to rewriting the statute, conceding that "the new definition *would more broadly define* the term 'frame or receiver' than the current definition." PR at 27727 (emphasis added). Indeed, the PR would revise the regulatory definition of "the frame or receiver" so that a single "firearm" might be comprised of **multiple** "frames" and "receivers" and might even apply to other "parts" that are in no way frames or receivers. *See* PR at 27722 (noting that Congress replaced the term "part or parts" in the Gun Control Act, but then seeking to go back to a system where "the major *parts* of a weapon" are regulated and manufacturers must "mark[] these *parts*" and "record[] these *parts* as 'firearms.'") (emphasis

added). Any one of these "parts" in ATF's eyes would be considered a firearm. *See* PR at 27721-22. *See also* at 27743 ("the Director may determine whether a specific *part or parts* of a weapon is the frame or receiver") (emphasis added); *see also* at 27734 (noting "the possibility that a firearm *may have more than one frame or receiver* as defined in this rule….") (emphasis added).

In order to accomplish ATF's agenda to revert to the FFA, the PR proposes to now define "frame or receiver" to be:

> *A part of a firearm that, when the complete weapon is assembled, is visible from the exterior and provides housing or a structure designed to hold or integrate one or more fire control components, even if pins or other attachments are required to connect those components to the housing or structure. Any such part identified with a serial number shall be presumed, absent an official determination by the Director or other reliable evidence to the contrary, to be a frame or receiver. For purposes of this definition, the term "fire control component" means a component necessary for the firearm to initiate, complete, or continue the firing sequence, including any of the following: Hammer, bolt, bolt carrier, breechblock, cylinder, trigger mechanism, firing pin, striker, or slide rails.* [PR at 27741.]

Thus, whereas the statute defines "*the* frame or receiver," the PR would rewrite that to be "*a* frame or receiver." *Id.* (emphasis added). The PR intends that "there could be more than one part of a complete weapon … that is the frame or receiver…." PR at 27731. The PR indicates that "*each* part of a weapon defined as *a* frame or receiver must be" serialized. *Id.* (emphasis added). This is patently contrary to the language of the statute and the intent of Congress, which is that each firearm contain only *one* component frame or receiver.

**B.  ATF Elevates Perceived Intent Over the Statutory Text.**

In an almost incomprehensible statement, ATF claims that "[e]xisting law recognizes that the definition of 'frame or receiver' need not be limited to a strict application of the regulation." PR at 27721. By this gibberish, ATF appears to be arguing that the definition of "frame or receiver" is not limited to the words used in the statute, and should be interpreted not as written, but according to the shifting sands of ATF's policy agenda.

In support of its claim, ATF asserts that "[c]ourts interpreting definitions in the [Internal Revenue Code] have not strictly applied those definitions where they would be manifestly incompatible with the intent of the applicable statute," and relies on three judicial opinions – not from any Article III court, but rather from the United States Tax Court – an Article I court established by Congress. PR at 27722 n.12. Apparently, ATF was not able to find any Article III decisions to support its claim. Indeed, numerous Article III courts such as the Eleventh Circuit have refused to:

> "interpret a statute contrary to the plain meaning of its words if doing so would, in the court's view, better further the purpose it thinks Congress had in mind.... As the Supreme Court recently reminded us, 'law depends on respect for language.' ... We interpret and apply statutes, not congressional purposes. ... ('[I]t is ultimately the provisions of our laws rather than the principal concerns of our legislators by which we are governed.') ... In any event, '[t]he best evidence of that [legislative] purpose is the statutory text adopted by both Houses of Congress and submitted to the President.'" [*Gordon v. Novastar Mortg., Inc.* (*In re Hedrick*), 524 F.3d 1175, 1187-1188 (11th Cir. 2008).][1]

**ATF apparently believes the statute is flawed,** failing to encompass modern firearms, because it defines a firearm as having only one "frame or receiver" while ATF claims that modern firearms can have many frames and receivers. *See* PR at 27721 (when the current statute was enacted, "single-framed firearms … were far more prevalent for civilian use than split/multi-piece receiver weapons," and it was only "[y]ears after these definitions were published" that "split/multi-piece receiver firearms … became popular.").

**ATF obviously believes that its existing regulation is insufficient**, because "ATF's regulatory definitions … do not expressly capture these types of firearms," meaning only

---

[1] *See also Martinez v. Larose*, 968 F.3d 555, 561 n.5 (6th Cir. 2020) (quoting *Connecticut Nat. Bank v. Germain*, 503 U.S. 249, 253-254 (1992)). Indeed, it is axiomatic that, as is the case here, courts will not "overlook an interpretation that flies in the face of the statutory language." *Sundance Assocs. v. Reno*, 139 F.3d 804, 810 (10th Cir. 1998); *see also DaVita, Inc. v. Marietta Mem. Hosp. Emple. Health Ben. Plan*, 978 F.3d 326, 341 (6th Cir. 2020) ("Deference to agency interpretation of a statute is in order only when such interpretation is 'not in conflict with the plain language of the statute.'"); *Garcia v. Secretary of Health & Human Servs.*, 46 F.3d 552, 557 (6th Cir. 1995) ("where [an] interpretation conflicts with the plain language of the governing statute, we will not hesitate to overturn that interpretation.").

"approximately 10% of currently manufactured firearms" contain the parts listed in 27 C.F.R. 478.11. *Id.* at 27721 n.8. Certainly, an agency is free to revise its own regulation if it proves to be unworkable. But the agency is most certainly not permitted to amend the statute, as ATF seeks to do here. Nor may ATF amend its regulation in a way that flies in the face of the statute Congress actually enacted.

If ATF's regulation is deficient, then the agency must work within the confines of the statute to fix it. But if the statute is somehow deficient, as ATF claims (these commenters do not agree), then ATF should approach Congress and seek a legislative fix, rather than amending the statute as if by divine right.

### 2. ATF Rejects Numerous Judicial Opinions Interpreting the Statute and Regulation.

ATF apparently believes it is a law unto itself. In claiming that its statutory rewrite is "necessary," ATF broadly maligns the federal courts, claiming that judges have uniformly "misinterpreted" the statute by following the text of the statute. PR at 27722. ATF lists several court cases that have interpreted the statutory term "the frame or receiver" to mean that "the receiver of a firearm must be a single unit…." *Id.* ATF claims that these uniform, text-based decisions are "erroneous," and that "[s]hould the current definition remain in place and courts continue to interpret it" as they have, "the public" will be "put[] at risk." PR at 27727. ATF claims that its new proposed definitions will "help ensure that the regulatory definition of 'frame or receiver' will not be misinterpreted by the courts…." *Id.*[2]

ATF asserts that "the current definitions were never intended to be, or understood to be, exhaustive," and bemoans that, "[i]n the past few years … some courts have treated the

---

[2] ATF claims that "[i]n light of recent court cases, the majority of regulated firearms may not meet the existing definition of firearm frame or receiver." PR at 27738. If that is the case, then responsibility lies with Congress, not the agency, to modernize the statutory language.

regulatory definition as exhaustive…." PR at 27721-22. But if the statute and the regulations are not "exhaustive" – if they mean something more or something different than what they say – then the law becomes whatever ATF declares it to be.

Remarkably, according to ATF, it is not the courts which have misinterpreted the statute, but instead ATF admits that *the agency has knowingly and, in fact, deliberately misinterpreted its own regulatory framework* for decades. In fact, ATF acknowledges that "neither the upper nor the lower portion of a split/multi-piece receiver firearm alone falls within the precise wording of the regulatory definition," and thus "ATF has for many years interpreted the regulatory definition using [various] factors [that do not appear in the statute or regulation] as a guide in determining which portion of a weapon model is a firearm frame or receiver." PR at 27721. In other words, ATF takes the position that, *since its regulation never worked, the agency just made things up as it went along*. With such an admission, it is thus hardly a surprise that federal courts have disagreed with the agency's admittedly bogus interpretation of its own regulation, and unsurprising that these courts have concluded that each firearm contains *one* frame *or* receiver.

### 3. The Proposed Definition of "Frame or Receiver" Is Expansive in its Vagueness and Nonsensical in its Application.

As noted above, ATF's proposed redefinition of "frame or receiver" is **contrary to the text** of the statute, contrary to **Congress's intent** to de-regulate firearm parts, and **contrary to numerous judicial opinions** interpreting both Section 921(a)(3) and ATF's existing regulation to mean that each firearm contains *one* frame *or* receiver. Additionally, the Proposed Rule is **ambiguous and vague**, and for that reason is "arbitrary and capricious," in violation of the Administrative Procedures Act. Finally, by creating a definition whereby firearms could have multiple frames and receivers, the Proposed Rule is also **a complete reversal of ATF's professed "long[standing] position** … that the weapon 'should be examined with a view toward

determining if [**either**] the upper **or** lower half of the receiver more nearly fits the legal definition of "receiver."'" PR at 27721 (emphasis added).

### 4. The Proposed Definition of "Frame or Receiver" Is Vague and Ambiguous.

The PR claims that a frame or receiver is "[a] part of a firearm that, when the complete weapon is assembled, is visible from the exterior…." PR at 27741. ATF claims that this language "makes clear that a 'frame or receiver' **must** be **visible** to the exterior when the complete weapon is assembled." PR at 27727 (emphasis added). ATF notes that "an internal frame or chassis at least **partially exposed** to the exterior … may be determined by ATF to be the frame or receiver…." *Id.* (emphasis added).

First, these statements are ambiguous. ATF could be claiming either (i) that it will not consider a part to be a frame or receiver **unless** it currently is visible from or partially exposed to the exterior, or else (ii) that **if** ATF designates a part to be a frame or receiver, **then** it can require the manufacturer **to make that part** visible from or partially exposed to the exterior. Second, this requirement is not supported by the statute, which contains no "visibility" or "exposure" requirement in order for a firearm part to be "the frame or receiver." Third, it would seem that ATF's purpose for this requirement is to make it easy to view the serial number and other markings on a firearm without disassembly. ATF claims that "identifying markings" on frames or receivers must be susceptible to FFLs "**quickly** record[ing]" them, and to law enforcement to "**easily** see" them. PR at 27727 (emphasis added). But simply being "visible" or "partially exposed" and thus being considered a frame or receiver does not mean that such a part contains sufficient exterior surface area to be marked and serialized. An AR-15 trigger is "partially exposed to the exterior," but that does not mean it can be serialized to ATF's specifications.

### a. Under ATF's Proposed Rule, a Firearm Like an AR-15 Could Contain as Many as Ten Frames and Receivers.

As noted above, the PR would define "frame or receiver" in such a way that a single firearm could contain multiple frames or receivers.[3] This raises the question – how many frames and receivers could a single firearm possibly contain? Humpty Dumpty provides ATF's obvious answer:

> Humpty Dumpty: "When I use a word, it means just what I choose it to mean – neither more nor less.
> Alice: "The question is whether you can make words mean so many different things."
> Humpty Dumpty: "The question is which is to be master – that's all."

The current regulation defines "frame or receiver" as "[t]hat part of a firearm which provides housing for the hammer, bolt or breechblock, and firing mechanism, and which is usually threaded at its forward portion to receive the barrel."[4] 27 C.F.R. 478.11. ATF now maligns its own definition as too "rigid" and "specific," and lauds its new definition as "general enough…." PR at 27727. Indeed, ATF's proposed new definition is "general," to say the least. The PR would expand the current list of **5 identified parts** to now include **any part** that is a "'fire control component,' mean[ing] a component necessary for the firearm to initiate, complete, or continue the firing sequence…." PR at 27741.

---

[3] To be sure, ATF gives various examples of firearms that contain one "frame or receiver" (PR at 27741-42), and provides a definition and various examples of "split or modular frame or receiver" firearms where ATF has arbitrarily chosen one part or another to be the "frame or receiver" (PR at 27743-46). ATF's proposed replacement test for determining which part constitutes a frame or receiver is equally unclear, adopting a seven-part test of "the factors ATF considers" but of which "[n]o single factor is controlling." *See* PR at 27728, 27743. Yet there is no explanation of how each concept will be applied. For example, ATF states that it will consider "how the component fits within the overall design of the firearm when assembled" (PR at 27743), but does not explain further what "fits" weigh in favor of classification as the frame or receiver, versus what types of "fits" weigh against such classification.

[4] The PR implies that ATF could consider a "barrel" to be a "frame or receiver," which is diametric to the existing regulation states that the "frame or receiver" is "usually threaded at its forward portion *to receive the barrel*." As the existing regulation makes clear, the barrel is the part that is "received," not the part that does the receiving. *See* 27 CFR Section 478.11. ATF apparently believes circularly that a frame or receiver accepts the barrel, and at the same time that the barrel is a "frame or receiver" because it receives the frame.

Although ATF provides a non-exhaustive list of examples that would be considered "fire control components,"[5] in reality this expansive definition ***would apply to virtually every part of a firearm***, since virtually all parts of common firearms are "component[s] necessary for the firearm to initiate, complete, or continue the firing sequence."

For example, an AR-15[6] requires an **upper** and **lower** receiver to house the majority of its parts, and thus both are obviously necessary for the "firing sequence." Likewise, the **buffer tube**, **buffer**, **buffer spring**, **castle nut**, and **end plate** are necessary to keep the bolt cycling as part of the "firing sequence." On the lower receiver, the **disconnector**, **hammer**, **trigger** and associated **springs**, the **mag catch spring and button**, and various **pins**, **springs**, and **detents** are necessary for the "firing sequence." On the upper receiver, the **barrel**, **bolt carrier group**, **bolt** (and all **components** thereof), **firing pin**, **gas tube**, and **gas block** are all similarly "necessary" for "the firing sequence." In fact, *the only parts* of an AR-15 that *aren't* absolutely "necessary" to the firing sequence would seem to be the pistol grip, bolt catch, safety, stock, forward assist, dust cover, trigger guard, sights, muzzle device, and handguard.

Under ATF's proposed definition, each of these numerous parts above would be considered one of the "fire control components" within a firearm, and thus any part that "provides housing or a structure designed to hold or integrate one or more" of these "fire control components" in turn would be considered a "frame or receiver."

---

[5] ATF provides a non-exhaustive list of 9 such parts, including "hammer, bolt, bolt carrier, breechblock, cylinder, trigger mechanism, firing pin, striker, or slide rails." PR at 27741. The use of the term "including" means that there are other parts not on this list. Indeed, the PR notes that these parts are listed "at a minimum" and "the definition is not limited to those particular fire control components." PR at 27727.

[6] ATF claims that certain existing firearms would continue to be marked as they currently are (PR at 27728, 27743), but ATF explains that firearms newly designed or models newly configured in the future would be analyzed under the new proposed framework. Since it is impossible to apply ATF's Proposed Rule to firearm designs and configurations that do not yet exist, these comments apply the proposed regulatory framework to existing firearms for hypothetical purposes.

Applying ATF's expansive definition of "fire control components," the list of parts that derivatively would be considered a "frame or receiver" grows exponentially. A **bolt** houses the firing pin, so it could be a firearm. A **bolt carrier group** houses the bolt, so it could be a firearm. An **upper receiver** houses both the bolt and the bolt carrier group, so it could be a firearm. A **stock** (even though it is not necessary for operation) houses a buffer tube (which is a fire control component), so it might be a firearm. A **buffer tube** houses a buffer spring and buffer, so it could be a firearm. A **buffer spring** houses the buffer, so it might be a firearm as well (depending on ATF's meaning of "visible to the exterior"). A **barrel nut** "provides … structure" for the barrel to attach to the upper receiver. One might even argue that an AR-15 **trigger** houses the disconnector within its groove. And obviously, the **lower receiver** – the only part of an AR-15 currently considered a firearm – presumably would continue to be such. Plus, ATF hints that a **barrel** might soon be considered a firearm (see below), even though it "provides housing or a structure" for no other parts. In total, ***applying ATF's expansive definition could mean that one AR-15 might be declared by ATF to contain as many as ten (or even eleven, see below) frames and receivers***.[7]

In short, since the entire purpose of a firearm is to perform the "firing sequence," virtually every part is obviously necessary to that process. And as such, any part that "houses" one of those many parts could be considered a "frame or receiver." Under the PR, each one of these parts would require a federal firearms license to manufacture or sell. Each would require a background check to obtain, and recordkeeping of dispositions. Each would require serialization.

---

[7] Depending on how strictly this absurd definition is applied, this number could be even higher. For example, an AR-15 buffer has component parts within it, as do other parts.

But how would one serialize a buffer spring?[8] Assembled, there would be one "gun," but taken apart, there could be nearly a dozen "firearms."



Clearly, this is not what Congress intended. The former Federal Firearms Act regulated all gun parts, but the GCA explicitly repealed that as "impractical" and made clear that each firearm has one "frame or receiver." ATF's PR rejects the GCA's limitation and reverts to the broad regulation of firearm parts under the FFA.

**b.   Magazines Are Not Firearms.**

Under ATF's absurd proposed definition of "frame or receiver," the agency might even consider a magazine body to be a firearm, because it contains "component[s] necessary for the firearm to initiate, complete, or continue the firing sequence…." *See* PR at 27741. To be sure, many modern firearms can fire **one** round without a magazine (unless they are equipped with a "magazine safety" or "magazine disconnect" that prevents their firing without the magazine being inserted, in which case they can fire **no** rounds without the magazine). But no magazine-fed firearm can fire **multiple** rounds (*i.e.*, "continue the firing sequence") without the magazine being inserted. Since all parts of a magazine are necessary for the firearm's "firing sequence," and the magazine body of a box magazine typically houses the follower, the spring, and the

---

[8] The Proposed Rule likely will put many smaller manufacturers of gun parts out of business entirely, unable or unwilling to incur the expense and devote the time necessary to obtain a FFL and wade through ATF's layers upon layers of red tape.

floorplate, ATF could argue that the magazine body is itself a "frame or receiver," and thus a firearm requiring serialization and a background check to purchase.[9]

### c.  A Barrel Is Not a Firearm.

ATF's proposed definition of "frame or receiver" claims that any part that is currently serialized by a manufacturer would be "presumed" to be a frame or receiver. PR at 27741. As it just so happens, Glock and other major manufacturers serialize the barrels of various models of handguns of their own accord, which would mean that ATF could "presume[]" a barrel to be a firearm. *See also* PR at 27731 (discussing the "barrel" as a part which might need to be serialized).

Of course, there are nefarious reasons why ATF might seek to rewrite the statute to regulate barrels as firearms. First, as ATF notes, "[t]echnological advances have [] made it easier for unlicensed persons to make firearms at home from standalone parts or weapon parts kits, or by using 3D printers…." PR at 27722 (emphasis added). As ATF notes, personal firearms "are not required by the GCA to have a serial number placed on the frame or receiver, making it difficult for law enforcement" to trace. *Id.* Yet with all the technological advances in firearms made for personal use, it is currently impossible to 3D print a barrel, and virtually impossible to manufacture one without expensive tooling, equipment, and knowledge.  Thus, in order to complete a homemade firearm, **it is almost always the case that a person must purchase a barrel** from a third-party vendor. By seeking to define "frame or receiver" to include barrels, including those that are used for privately made firearms, **ATF's proposed definition seeks to**

---

[9] An attempt by ATF to regulate magazines as firearms would be outrageous, but it would hardly be surprising. While ATF might believe that magazines are firearms, its current nominee for director apparently believes magazines are the same thing as machineguns. *See* L. Nichols and D. Chipman, "Legal and Lethal: 9 Products That Could Be the Next Bump Stock," Giffords Law Center (Sep. 28, 2018) at 11 ("The danger posed by firearms [with so-called large capacity magazines] that enable shooters to continue firing in this manner is the same reason Congress chose to include machine guns in the NFA.").

**enact backdoor regulation of homemade firearms** – something Congress never intended, which the GCA does not do, and which ATF certainly has no authority to accomplish through a rulemaking.

Second, barrels are the one main portion of a firearm that experiences wear and tear and eventually can need replacement. In contrast, the portion of a "firearm" that is "the frame or receiver" and thus needs to be serialized has always been one that does not experience significant wear, such as an AR-15 lower receiver or a Glock frame. These components can last for tens or hundreds of thousands of rounds if properly maintained. This has meant that a person could always maintain and repair their firearm, replace parts as necessary, and pass them down through the generations. Now, however, every time a shooter would need to replace a barrel, they would need to purchase one from an FFL as a "firearm."

ATF's implication that a barrel could somehow be a "firearm" under federal law is belied by the dictionary definitions ATF cites, which state that a "frame" "serves as a mounting for the barrel" and a "receiver" means "the metal frame … to which the breech end of the barrel is attached." PR at 27720 n.4. Of course, barrels are not firearms – neither under the statute nor under the existing regulation. Yet if applied to barrels in the way that ATF has implied, the PR would transform every single firearm in the United States into a regulated Gun Control Act firearm. If, as the PR implies, ATF's intent is to regulate barrels as firearms, then the agency is falsely claiming that "nothing in this rule would restrict persons not otherwise prohibited from possessing firearms from making their own firearms at home without markings solely for personal use…." PR at 27725.

### d.   ATF Has No Authority to Delegate Control over Federal Law to the Gun Industry.

As noted above, the proposed definition of "frame or receiver" provides that "[a]ny such part [which houses fire control components] identified with a serial number shall be presumed, absent an official determination by the Director or other reliable evidence to the contrary, to be a frame or receiver." PR at 27741. ATF does not explain what such "reliable evidence to the contrary" might look like, so that qualification provides little promise of a safe harbor. And, of course, ATF is under no obligation to provide "an official determination" that a serialized part is not a frame or receiver, so that qualification similarly provides scant protection.

This leaves it up to a firearm manufacturer or importer to determine through the manufacturing process which part(s) constitute frames or receivers. As noted above, Glock brand pistols contain serial numbers not only on the frame but also on the slide and the barrel – not because any federal law or regulation requires it, but because it is a European standard for sales on that continent. As another example, many surplus SKS type rifles have numerous parts that are serialized, including many which are not frames or receivers, such as the wooden stock, charging handle, bolt, gas tube, receiver cover, magazine, and trigger guard.[10] *See* "Parts with Serial Numbers." The list goes on.

Permitting the firearms industry, through marking various parts, to thereby add[11] additional frames and receivers to firearms they manufacture or import constitutes an

---

[10] Of course, when it comes to firearm manufacturers who only mark and serialize "the frame or receiver," the additional burden of marking possibly several additional parts will add additional cost and complexity to the manufacturing process, a cost which no doubt will be passed on to gun owners.

[11] This delegation is a one-way ratchet – additional parts can be serialized and thus turned into frames or receivers, but at minimum manufacturers and importers must mark those parts that ATF already considers to constitute firearms.

impermissible delegation of authority to third parties as to what constitutes a firearm under

federal law.

**C. ATF Blatantly Proposes to Expand the Statutory Definition of "Firearm" to Include Items that Are Not Firearms, that Have Never Been Firearms, and Which Congress Never Intended to Be Considered Firearms.**

**1. ATF Proposes to Rewrite the Statute to Regulate Unmanufactured "Weapon Parts Kits" as Firearms.**

The Gun Control Act defines a "firearm" as:

*(A) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; (B) the frame or receiver of any such weapon; (C) any firearm muffler or firearm silencer; or (D) any destructive device. Such term does not include an antique firearm.*" [18 U.S.C. Section 921(a)(3).]

ATF's regulation at 27 C.F.R. Section 478.11 is and has always been a mirror of the statute.

Suddenly, now, ATF apparently has decided that the statutory language is entirely

insufficient. Much as in 2018, when it attempted to write "bump stocks" by name into the

statutory definition of "machinegun," ATF seeks through regulation to expand the statutory

definition of "firearm," proposing to now include at the end that:

*[t]he term **shall include a weapon parts kit** that is designed to or may readily be **assembled**, **completed**, converted, or **restored** to expel a projectile by the action of an explosive. The term shall not include a weapon, including a weapon parts kit, in which each part defined as a frame or receiver of such weapon is destroyed.* [PR at 27741 (emphasis added).]

The words "**assembled**" and "**completed**" do not appear in the statute, but ATF proposes to add

these new words through regulation, in an apparent attempt to target unregulated parts used to

make homemade firearms, that the agency recognizes the statute does not cover.

The Proposed Rule then attempts to explain the meaning of the term "weapon parts kit."

ATF describes **two types** of "weapon parts kits." First, the PR explains that one type "contain[s]

most or all of the **components** (finished or unfinished) necessary to complete a functional

weapon within a short period of time."[12] PR at 27726. Second, the PR explains that a second type of such kits "include **jigs, templates, instructions, drill bits, and tools** that allow the purchaser to complete the weapon to a functional state with minimal effort, expertise, or equipment." *Id.* (emphasis added). According to ATF, either would be declared a firearm – claiming that "[w]eapon parts kits such as these are 'firearms' under the GCA," and "[m]anufacturers of such parts kits must be licensed…." *Id.* But ATF is not done.

Not only does ATF attack complete "weapon parts kits" and define them as firearms, but also it claims that a "criminal conspiracy" charge could attach if various parts were **sold separately** by the same vendor – or **even by entirely different vendors** – likening the 80% industry to a case "where one defendant sold parts kits containing the component parts of Sten machineguns except receiver tubes, and the other sold customers blank receiver tubes along with detailed instructions on how to complete them." PR at 27726 n.45. This means that ATF might claim that someone who sold an unfinished frame or receiver **by itself** – without any "components" or "tools" that constitute "weapon parts kits" – nevertheless could be considered to have conspired with other dealers or manufacturers to sell a complete "weapon parts kit." In other words, the Proposed Rule can be viewed as an effort by ATF **to eliminate the market for 80% frames and receivers entirely**. ATF appears to admit as much, calling out by name the popular "Polymer 80" as being "completed in under thirty minutes." PR at 27729 n.54.

ATF likens "weapon parts kits" to *fully manufactured* but unserviceable/broken firearms, which many courts have held to be firearms. PR at 27726 n.39. Next, ATF likens "weapon parts kits" to firearm kits which contain all the necessary (and *fully manufactured*) parts, but are merely in unassembled form. *Id.* at n.40 and n.41. Neither analogy holds water, because "weapon

---

[12] In order to define how "minimal" or how "short period of time" ATF means, the PR proposes another new definition, of "readily," which is discussed below.

parts kits" as ATF defines them are not *fully manufactured* but broken firearms, or *fully manufactured* but unassembled firearms. Rather, they are not firearms at all, because **the frame or receiver is in an incomplete stage of manufacture**.

Next, ATF relies on IRS Revenue Rulings and a decision from yet another Article I court – the Court of Federal Claims – for the proposition that "unassembled components" that have "reached the stage of manufacture or development where they became *recognizable as*" a particular item would now constitute that item, "even though there remained one or more finishing operations to be performed." PR at 27726 n.44 (emphasis added). This is a slender reed. The tax court opinion cited by ATF (a taxing statute involving when someone *legally* manufactures a fishing rod and thus can be required to pay a *tax*) involves an entirely different type of law from the Gun Control Act (a criminal statute involving when someone *illegally* manufactures a firearm and can be sent to *prison*). Moreover, the tax court case acknowledged that "[n]either the statute nor the Regulations defines exactly what is meant by 'fishing rods,'" whereas in this case, both statute and regulation define "firearm," and neither definition includes "weapon parts kits" as ATF would define the term. *See Hine v. U.S.*, 113 F. Supp. 340, 342 (Ct. Cl. 1953).

Finally, unlike ATF's assertion that current firearm designs and configurations might be grandfathered as to how their frames and receivers are identified and serialized (PR at 27728, 27743), the PR contains no similar assurance that past FATD classification letters would continue to be honored for existing models of 80% frames or receivers. Thus, the PR must be read as a repudiation of all prior ATF guidance on the 80% issue, without any justification provided for the changed position – other than that such precursors make it easier for a law-

abiding gun owner to manufacture a homemade firearm – something perfectly legal to do under federal law.

### 2. ATF's "Identifiability" Standard Turns Paperweights into Firearms.

Next, ATF proposes to create an entirely new category called "partially complete, disassembled, or inoperable frame or receiver." PR at 27729. ATF claims that an item in this category would constitute a "frame or receiver" and thus a "firearm" if it "has reached a stage in manufacture where it may readily be completed, assembled, converted, or restored to a functional state." *Id.*

ATF further defines "partially complete" to include an "article that has reached a stage in manufacture where it is *clearly identifiable as an unfinished component* part of a weapon." *Id.* (emphasis added). This definition would adopt the tax court's understanding that an item becomes a fishing rod when it "reache[s] the stage of manufacture or development where they became recognizable as" one. PR at 27726 n.44. But this would mean that even a 20% receiver must be considered a firearm because it is certainly "clearly identifiable" as an AR-15 lower receiver, even though it is advertised with the statement that "[u]nless you are an experienced machinist, this is a novelty item."



Attempting to limit the absurd reach of its "identifiability" standard, ATF then promises that "unformed blocks of metal, and other articles only in a primordial state would not—*without more*—be considered a 'partially complete' frame or receiver." PR at 27729 (emphasis added). So *presumably* a 0% receiver – *i.e.*, a block of aluminum – would not be considered a firearm.

Of course, if a solid block of aluminum included "more" – such as First Amendment-protected instructions on how to mill AR-15 receivers from blocks of aluminum – then **perhaps ATF might consider even a block of aluminum to be a firearm**.



Presumably, a spool of plastic for a 3D printer would not be a firearm, unless it was accompanied by a flash drive with instructions on 3D printed firearms, in which case the spool of plastic might need to be serialized and transferred on a 4473 after a background check.



ATF's new idea that "partially complete" (unmanufactured) items are firearms means that, at *some unspecified point* between being a spool of plastic or raw piece of aluminum, and having the generalized exterior shape of a receiver, an item would become a firearm. ATF then attempts to explain "*the point* at which an unregulated piece of metal, plastic, or other material becomes a regulated item under Federal law." PR at 27729 (emphasis added). ATF explains that this occurs "when it has reached a *critical stage* of manufacture," when "a *substantial step* has been taken" or "a *critical line crossed*," making the item "*sufficiently* complete" or "readily [] completed." *Id.* (emphasis added). Of course, ATF does not explain what any of these vague and standardless terms mean. ATF is not permitted to write into the federal criminal code Justice Stewart's understanding of obscenity in his concurring opinion in *Jacobellis v. Ohio*, 378 U.S. 184 (1964) that "I know it when I see it."

### 3. ATF's Definition of "Readily" Is Similarly Vague and Standardless.

Next, ATF purports to define the word "readily," within the statutory phrase "may readily be converted," to mean "[a] process that is fairly or reasonably efficient, quick, and easy, but not necessarily the most efficient, speedy, or easy process." PR at 27747. ATF claims that this gobbledygook will "provide further clarity" over the current state of the law. PR at 27730. It is hard to take this claim seriously.

Indeed, the words "fairly" (adverb) and "reasonably" (adverb) and "efficient" (adjective) and "quick" (adjective) and "easy" (adjective) and "speedy" (adjective) are all relative terms – inherently malleable, flexible, vague, standardless, and open to infinite interpretation. Running a marathon might be "easy" for a triathlete, but not for someone who just had double bypass surgery. ATF's definition thus provides absolutely no fixed standards, and thus no one will ever have any idea what "readily" convertible means until they find themselves on the receiving end of a criminal indictment (or a no-knock raid). *See* P. DePuy, "How Cutting out Vague Adjectives Can Make Us More Truthful (and Trustworthy)," MainStreetHost (Aug. 8, 2014).

Humorously, ATF attempts to provide further guidance by providing an eight-part "list" of "factors" that are "relevant in making [the readily] determination," but then explains how this list is arbitrary when it admits that "no single one [is] controlling" and the list "include[s]" *but is not limited to* these eight factors (PR at 27747), so presumably ATF will consider whatever it wants on an *ad hoc*, case-by-case basis. Additionally, like with the adjective-laced definition above, none of the eight listed factors provides any guidance at all. ATF states that it will consider "how long" and "how difficult" and "what knowledge and skills" and "what tools" and "availability" of additional parts and "how much" and "scope" and "feasibility." None of these

factors have any precise meaning, and none include any fixed numerical or other guides. Is $5 relevant, or $500? Does a ballpeen hammer count as a relevant "tool," or a rubber mallet?

ATF defends its definitions as being "based on case law." PR at 27730. But the fact that ATF's cobbled-together concepts may use words derived from a dozen or more various widely-varying legal opinions does not make the Proposed Rule clear and unambiguous. In fact, ATF cites numerous cases from across the country, decided over the past 50 years, for the proposition that an item is "readily" converted into a firearm if it takes anywhere from "12 minutes to fire live ammunition" to "an eight-hour working day in a properly equipped machine shop." PR at 27730 n.58. If anything, this wide range of legal opinions shows that federal courts have had difficulty interpreting when something can be "readily [] converted" into a firearm, and ATF's attempt to synthesize such widespread disagreement by the courts into a coherent definition is laughable.[13]

Indeed, during "an eight-hour working day in a properly equipped machine shop," a single knowledgeable person could manufacture any number of firearms from start to finish. For example, it takes under three hours to 3D print an AR-15 lower receiver, and even less to print a Glock frame – with only a few minutes devoted to set up. With a CNC machine, it is possible to mill an AR-15 lower receiver from start to finish. The list goes on. ATF's concept of how much permissible time, skill, and equipment is allowable to finish a "partially complete" frame or receiver – but still render it "readily" convertible – would apply to literally every stage of the firearm manufacturing process, because any step past the "primordial state" (which ATF in its

---

[13] ATF's regulatory definition of "readily" in "readily converted" is absurd when compared to the agency's use of "readily" elsewhere in its regulations, such as the requirement that a serial number be done "in a manner not susceptible of being *readily* obliterated." PR at 27743, 27747 (emphasis added). Since a serial number on a typical firearm without question could be "obliterated" hundreds of times over during "an eight-hour working day in a properly equipped machine shop," it seems unlikely that serial numbers must be designed to withstand 8 hours of abuse with an angle grinder. Thus, it similarly seems highly unlikely that a frame or receiver is capable of being "readily converted" if it takes 8 hours of machining to complete with specialized equipment.

benevolence takes off the table) would mean that a person has an item which can be turned into a firearm.

### 4. Putting It All Together.

When compared to the Proposed Rule, ATF's existing guidance on what constitutes a frame or receiver is a model of clarity (even if entirely arbitrary). In a long series of classification letters, ATF has opined that *various specific "machining operations"* on unfinished polymer handgun frames and AR-15 and AR-10 type receivers cross the line so that the part becomes a "frame or receiver," while other *specific "machining operations"* do not cross that line. Indeed, ATF's website explicitly states that "ATF has long held that … [r]eceiver blanks that do not meet the definition of a 'firearm' are not subject to regulation under the Gun Control Act (GCA) [because] items such as receiver blanks, 'castings' or 'machined bodies' in which the fire-control cavity area is completely solid and un-machined have not reached the 'stage of manufacture' which would result in the classification of a firearm according to the GCA."

The Proposed Rule is completely incompatible with, and thus repudiates entirely, these prior holdings, and reverses ATF's longstanding position that 80% frames and receivers do not constitute firearms. While such prior line drawing guidance may have been arbitrary on ATF's part, *at least it provided some certainty* to those companies that manufacture and market 80% receivers, and to the law-abiding gun owners who purchase such items. In stark contrast, the proposed rule is clear as mud.



The statute enacted by Congress regulates "**firearms**," and defines that word to include "**the frame or receiver**" thereof or something that "**may readily be converted**" into a functional firearm. ATF, however, takes the term "**frame or receiver**" and defines it to include a "**partially complete … frame or receiver**." Next, ATF defines "**partially complete … frame or receiver**" to include that "**may readily be completed**," blending the two statutory terms together, and including a seven-part non-exclusive and non-exhaustive test that may or may not be applied. Finally, ATF defines "**readily**" using a half dozen vague and ambiguous concepts, allegedly "clari[fied]" by eight vague and undefined criteria that are similarly non-exclusive and non-exhaustive.

ATF has thus created a definition, within a definition, within a definition, within a term. Worse yet, none of the words in the definitions the agency has provided has any clear meaning that can be deduced by lawyers and judges, or relied on by the industry and gun owners. Rather, the Proposed Rule creates a system where everything is left to the unquestionable discretion of ATF bureaucrats, using a sort of 'facts and circumstances' analysis conducted on a 'case-by-case basis.' That sort of structure is entirely foreign to the criminal law, where statutes must have precise meaning that can be understood by ordinary persons.

**D. ATF Proposes to Expand the Statutory Definition of "Silencer."**

The statute does not define a silencer by reference to a frame or receiver thereof, but rather discusses "device[s]" and "combination of parts" that constitute silencers. 18 U.S.C. Section 921(a)(24). Nevertheless, the Proposed Rule proposes to create out of whole cloth an entirely new definition of "firearm muffler or silencer frame or receiver," similar to that for a "firearm frame or receiver," being:

> "*a part of the firearm that, when the complete device is assembled, is visible from the exterior and provides housing or a structure, such as an outer tube or modular piece,*

*designed to hold or integrate one or more essential internal components of the device*…."
[PR at 27728.]

Even if ATF had authority to define silencers by reference to a so-called "frame or receiver" thereof, the PR makes the same mistake in the definition of "firearm muffler or silencer frame or receiver" as it does in the definition of "frame or receiver" – **wrongly assuming that** ***one*** **complete silencer might contain** ***multiple*** **frames and/or receivers that would each constitute individual silencers and which would each need to be registered and serialized**. That is not what Congress intended.

The proposed definition includes as a "firearm muffler or silencer frame or receiver" any "*modular piece*" (PR at 27743 (emphasis added)) – the word "modular" being composed of "modules" which are "each of a set of standardized parts or independent units," indicating there could be multiple such modules that would have to be marked. Indeed, the PR states that manufacturers must mark "each part [] or specific part(s)" that are considered frames and/or receivers, and that this means the outer tube *only* "with respect to *most* [but apparently not all] commercial silencer designs currently on the market." PR at 27728 (emphasis added).

For example, Sig Sauer recently released a [suppressor line](#) including the MODX-9 and MODX-45 which use a "user configurable **modular** baffle design." Currently, Sig serializes *only* the [main modular section](#) which attaches to the firearm. Yet under the PR, it would appear that ATF might require *each* modular section to be serialized – even though they are parts which make up a single suppressor – presenting a logistical nightmare for both the industry and gun owners alike. Likewise, other companies such as JK Armament sell "solvent traps" which many gun owners purchase and lawfully convert to silencers after receiving an approved Form 1 from ATF. Some of these devices contain "[modular](#)" components which comprise a complete unit. Under the PR, however, gun owners who lawfully manufacture suppressors on Form 1s from

these kits might be required to have each modular part serialized.[14] Since NFA engraving often

costs anywhere from $30-$70, a requirement to have not one engraving but as many as **nine**

identical engravings could increase the cost of manufacturing a suppressor by hundreds of

dollars for gun owners – if it can be done at all.[15]

Second, the proposed definition of "complete muffler or silencer device" states that ATF

will consider an item to be a suppressor if it "*contains all component parts necessary to function*

*as designed whether or not assembled or operable*." PR at 27741 (emphasis added). As a

preliminary matter, ATF's proposed definition replaces the statutory language "*parts designed*

*and intended*" with the agency's now preferred language "*parts necessary to function as*

*designed*," apparently meaning that the "intended" use for such parts would be irrelevant. Once

again, ATF has amended the statutory language that Congress enacted. This new language

should make any weekend mechanic cringe, as the federal government might suddenly decide

that their innocently owned oil or fuel filters are silencers. Additionally, the proposed definition

states that such alleged silencer "parts" need not even be fully manufactured or functional –

"whether or not … operable." This again could be used to target individuals who innocently own

any of a variety of common household objects, if ATF in theory could use them to manufacture a

silencer. ATF's proposed definition represents a thinly veiled targeting of popular items such as

"solvent traps" and "fuel filters" for NFA regulation, even though such devices do not fall within

the scope of the statute since they are not "parts, designed or redesigned, and intended for use in

---

[14] This assumes, of course, that ATF would consider each modular part to be a single "silencer" for purposes of a
Form 1 or Form 4, and that each would carry the same serial number.

[15] The Proposed Rule claims that ATF's new silencer definitions would make it easier "when repairing existing"
silencers (PR at 27733), but that is not the case if each modular part (which includes an internal baffle) must be
serialized. In such a situation, no replacement of a damaged section could occur without triggering an NFA taxable
event. This would then lead to the absurd situation where a person could have ***two or more*** *different NFA registered*
*silencers that are used as repair parts in a **single** suppressor*.

assembling or fabricating a firearm silencer or firearm muffler…."[16] 18 U.S.C. Section 921(a)(24).

Third, ATF's proposed new silencer definitions do not appear to respond to any legitimate need. ATF claims that, while the GCA requires only "the frame or receiver" of a firearm to be marked, the NFA "regulations currently assume that every part defined as a silencer must be marked in order to be registered…." PR at 27727. ATF claims that "this result has caused confusion and concern among many silencer manufacturers because some silencer parts defined as 'silencers,' such as baffles, are difficult to mark, and make little sense to mark for tracing purposes when the outer tube or housing of the complete device is marked and registered." *Id* at 27727-28. Thus, ATF purports to require only the "outer tube" to be marked as a way to avoid additional markings, while "individual muffler or silencer parts must be marked if they are disposed of separately…." *Id.* at 27728.

But ATF's professions of "confusion" and "concern" are simply not true. In fact, ATF has *never* required every individual part of a complete silencer to be marked, and these commenters are unaware of any silencer manufacturer who serializes any part of a silencer other than the outer tube *or* the end cap. Indeed, 27 C.F.R. Section 478.92 says only that "[a]ny part defined as a … firearm muffler, or firearm silencer … *that is not a component part of a complete weapon* at the time it is sold, shipped, or otherwise disposed of … must be identified as required by this section." Emphasis added. Thus, the "fix" for which ATF claims the proposed rule is necessary already exists in ATF's regulations.

Additionally, ATF's 2009 NFA Handbook Section 7.4.6 makes clear that "[s]ome FFLs/SOTs assemble silencers, for subsequent sale, from parts acquired from their contractors

---

[16] To be sure, gun owners do legally convert solvent traps and fuel filters into silencers after receiving an approved Form 1 from ATF.

[and] [u]nder these circumstances … contractors are not required to place identifying markings on silencer parts. … these contractors are not required to register the parts they produce by filing Forms 2, nor are they required to obtain approved Forms 3 to transfer the parts to assemblers." Again, the proposed rule would not appear to change or add to guidance that already exists.

Rather, ATF's proposed new definitions of silencers would adopt an ATF Advanced Notice of Proposed Rulemaking from 2018 entitled "Identification Markings Placed on Firearm Silencers and Firearm Mufflers," 81 *Fed. Reg.* 26764 (May 4, 2016). In that notice, ATF reported that the National Firearms Act Trade and Collectors Association ("NFATCA") had requested ATF take a 2008 "**recommendation**" that "manufacturers place all required markings on the outer tube of the silencer," and turn it into a **mandate** to "**require**" that manufacturers **must** mark the tube and **cannot** mark the end cap. *Id.* at 26765 (emphasis added). ATF never adopted that 2018 proposed rule advocated by NFATCA. Yet the current Proposed Rule would make this very change because, if a manufacturer is required to mark the part "designed to hold or integrate one or more essentially internal components," this would mean that the tube must be marked, not the end cap.

In sum, ATF claims it is responding to an industry need that simply does not exist. Below this subterfuge, the agency is attempting surreptitiously to adopt the anti-gun policy that it declined to adopt in 2018, while targeting solvent traps and fuel filters for elimination and increasing the hassle for those who possess modular suppressors.

## II.     The GCA Does Not Regulate "Privately Made Firearms," Yet ATF Seeks to Create Entirely New Regulatory Requirements and Even New Federal Crimes.

### A.  Privately Made Firearm.

Federal law does not define a "privately made firearm," and for good reason – the Gun Control Act does not prohibit a law-abiding person from assembling, finishing, or manufacturing

one's own firearm for personal use.[17] Thus, ATF's proposal to create a new definition of "privately made firearm" (PR at 27730) can signify only one thing – the agency's intent to rewrite the statute to claim the authority to regulate such items. ATF asserts that "nothing in this rule would restrict persons not otherwise prohibited from possessing firearms from making their own firearms at home without markings solely for personal use (not for sale or distribution)." PR at 27732. Of course, that is a non sequitur, focusing on what the proposed rule *does not do* (ban homemade firearms outright) is nothing more than a clever way of avoiding admitting what the final rule *does do* (regulate homemade firearms, items that Congress explicitly chose to leave unregulated).

ATF proposes to create a new term, "privately made firearm," defined as:

> *[a] firearm, including a frame or receiver, assembled or otherwise produced by a person other than a licensed manufacturer, and without a serial number or other identifying markings placed by a licensed manufacturer at the time the firearm was produced*.[18] [PR at 27746-47.]

In support of this new definition, ATF falsely asserts that "the GCA … required all firearms to be marked under federal law." *Id.* **No. It. Did. Not.** Indeed, 18 U.S.C. Section 923(i) states that:

> *(i) **Licensed importers and licensed manufacturers shall identify** by means of a serial number engraved or cast on the receiver or frame of the weapon, in such manner as the Attorney General shall by regulations prescribe, **each firearm imported or manufactured** by such importer or manufacturer.*

Similarly, ATF's existing companion regulation makes clear that:

> *a licensed manufacturer or licensed importer of firearms, must legibly identify **each firearm manufactured or imported**….* [27 CFR Section 478.92(a)(1) (emphasis added).]

---

[17] For one thing, there is a Second Amendment right to make a firearm for personal use. Federal cases so far dealing with similar issues are in accord, determining that the right to "keep and bear arms" implies "'a corresponding right' to obtain the bullets necessary to use them." *Jackson v. City and County of San Francisco*, 746 F.3d 953, 967 (9th Cir. 2014)) (emphasis added). *See Bezet v. United States*, 276 F. Supp. 3d 576, 605 (E.D. La. 2017) (restrictions on "the use of imported parts to assemble a firearm . . . likely impinge on the rights of law-abiding, responsible citizens . . . to acquire" firearms), aff'd 714 F. Appx. 336, 341 (5th Cir. 2017).

[18] ATF excludes from this definition NFA items that are regulated and recorded in the NFRTR. PR at 27730. ATF has chosen to exclude firearms manufactured prior to the effective date of the Gun Control Act, for a reason that it has not decided to share at this time. *Id.*

In other words, both the statute and existing regulation explicitly confine the marking requirement only to a firearm "**manufactured**" by a "**manufacturer**" or a firearm "**imported**" by an "**importer**."

Apparently not content with that limitation, ATF proposes to rewrite the statute: "this rule proposes to amend 27 CFR 478.92 to require **FFLs** to mark … each frame or receiver … of a weapon … that the licensee **acquired**…." PR at 27732 (emphasis added). Aside from the fact that, as explained above, a firearm has *only one* frame *or* receiver, ATF would create a new duty on **all** "FFLs" (not just manufacturers and importers) to mark **every** firearm they "acquire" (not just ones they manufacture or import). This is a gross expansion of the statute, **designed to lead to the serialization, recording, and tracking of every firearm in the country**. *See* PR at 27732 ("this proposed provision is necessary to allow ATF to trace all firearms….").[19]

In order to enforce its new serialization requirements, ATF creates a further definition of "importer's or manufacturer's serial number." PR at 27730. ATF now claims that, under 18 USC Section 922(k), "removal, obliteration, or alteration" is "prohibit[ed]," meaning it will now be a federal crime to remove a serial number on a PMF, *even though no statute requires a PMF to have such a marking. Id.* By this, ATF purports to create a brand new federal crime that Congress never enacted. But the agency should hold its proverbial horses, as "the Executive Branch, whether through the President or one of its agencies, cannot create criminal statutes;

---

[19] ATF claims that it is simply responding to a problem whereby FFLs have so many PMFs in inventory that they cannot match them all up in their records during inspection. PR at 27724. Of course, it is highly unlikely that many dealers have encountered this problem, since most who manufacture PMFs keep them for their own use, the resale value of PMFs is low, and dealers likely do not want the hassle (and potential liability) of dealing with them. However, abiding by the "never let a crisis go to waste" mantra, ATF is thus using a made-up crisis that does not exist as justification for the new regime imposed by the proposed rule.

only Congress can do so." *Chavez-Alvarez v. AG United States*, 850 F.3d 583, 589 (3d Cir. 2017).

ATF claims that these new definitions are "*[c]onsistent* **with the language** … of the GCA" (PR at 27732 (emphasis added)), even though the agency's definition blatantly **rewrites "the language** of the GCA," applying a requirement made for **certain** FFLs to **all** FFLs, and in effect removing the words "manufacture" or "import" and replacing them with the word "acquisition." *Id.* Since there is no federal requirement that FFL dealers mark firearms they acquire, traditionally they have never done so. Indeed, existing ATF guidance has been to simply mark Forms 4473 and A&D books with "NSN" for no-serial-number, any time transferring a privately made firearm, a pre-68 firearm, or a firearm with a worn and illegible serial number.

Now, ATF would require dealers to serialize every firearm they "acquire," aware of the reality that the typical dealer cannot – or will not – provide such services, which require expensive machinery to serialize to ATF's specifications. For example, ATF states that serializing polymer firearms "would typically require the licensee to embed (or use pre-existing) metal serial number plates within the plastic." PR at 27732.

In order to facilitate the agency's mandated serialization of all firearms, ATF next would create an **entirely new category** of "dealer-gunsmiths" who "engage in the business of identifying firearms for nonlicensees" and "may become licensed … solely to provide professional PMF marking services." PR at 27731. Yet under the statute that Congress enacted, it is not necessary for a person to obtain an FFL simply to mark, engrave, or serialize firearms. Indeed, as noted above, 18 U.S.C. Section 923(i) requires only manufacturers and importers to mark firearms, and 18 U.S.C. Section 921(a)(11) defines "dealer" only to include, with respect to what ATF terms a "gunsmith," "(B) any person engaged in the business of **repairing** firearms or

of **making** or **fitting** special barrels, stocks, or trigger mechanisms to firearms…." Emphasis added. Those listed activities could not possibly be interpreted to include **engraving** services. Indeed, ATF Ruling 2009-1 explicitly concluded over a decade ago that "[a]ny person who engages … engraving the external surface of a firearm, does not need to be licensed as a manufacturer under the Gun Control Act." The proposed rule would **repeal** ATF Ruling 2009-1, requiring a person to obtain an FFL in order to engrave firearms – and thereby **rewriting** 18 U.S.C. Section 921(a)(11).

There are many reasons to believe that ATF has a further nefarious reason for creating this entirely new category of FFLs because, once a person is a "dealer," he is forced by ATF to engage in recordkeeping. Indeed, ATF requires that "PMFs would first need to be recorded by the dealer-gunsmith as an acquisition in the licensee's A&D records upon receipt from the private owner (whether or not the licensee keeps the PMF overnight), and once marked, the licensee would update the acquisition entry with the identifying information, and then record its return as a disposition to the private owner." PR at 27731. Thus, **the proposed rule is not only a serialization requirement, but also a registration requirement**.

In requiring FFLs to "record"[20] their handling of privately made firearms any time they come into contact with one, ATF would repeal ATF's "overnight" rule as stated in ATF Ruling 77-1, which made clear that "a firearm need not be entered in the bound acquisition and disposition record if the firearm is brought in … and the owner waits while it is being adjusted or repaired or if the gunsmith returns the firearm to the owner during the same business day it is brought in." Since ATF recognizes that it only takes a few minutes to engrave a firearm, and thus that virtually no privately made firearms will be kept overnight "from one business day to

---

[20] ATF makes clear that a 4473 and background check are not required as part of its PMF firearm registration program – at least until its next arbitrary and capricious rule change.

another," ATF is forced to create this additional entirely new requirement. ATF's repudiation of its overnight requirement also requires repudiation of the understanding that PMFs must be serialized when they are "acquired" (not manufactured or imported) by FFLs, now requiring firearms to be serialized not when "acquired" but when merely handled in any way. There is no longer any pretense that the Proposed Rule is anything more than a naked requirement that all firearms be serialized so that privately manufactured firearms "can be traced." PR at 27731f.

In summation: **First**, ATF creates an entirely new definition of "privately made firearm" in order to regulate personal firearms that Congress explicitly chose not to regulate. **Second**, ATF then creates entirely new marking requirements for PMFs that are "acquired" by any dealer, rewriting the statutory text to do so. **Third**, ATF creates new crimes and penalties for removal or obliteration of a serial number that the statute never required to be there in the first place. **Fourth**, ATF creates an entirely new category of FFL that is outside the statutory text, in order to do the work of forced registration of privately made firearms. **Fifth**, ATF then creates new recordkeeping requirements for its new made-up class of licensee, repudiating prior guidance and rulings as to when firearms must be recorded in the A&D book. ATF's shameless attempt to regulate privately made firearms is so far afield from its statutory authority that it seems extreme even for this rogue agency.

### III.     ATF Attempts to Lull the Industry into a False Sense of Complacency.

Several times throughout the Proposed Rule, ATF claims that certain types of firearms might be grandfathered when it comes to how their frame or receiver is delineated, and how they are marked. *See, e.g.*, PR at 27743 ("[t]he Director has previously determined that a specific part is the frame or receiver with respect to certain weapons with split or modular frames or receivers," and "[f]rames or receivers of different weapons that are combined to create a similar

weapon each retain their respective classifications as frames or receivers provided they retain their original design and configuration."); at 27748, 27752 ("[l]icensed manufacturers and licensed importers may continue to identify firearms (other than PMFs) of the same design and configuration as they existed before"); *see also* at 27728, 27731.

Many have read these statements to mean that certain popular designs of firearms such as the AR-15, or handguns made by Glock and other manufacturers, will continue to have only one frame or receiver and continue to be marked as they currently are. Yet like much of ATF's Proposed Rule, the devil is in the details. In fact, in order to receive ATF's newly minted special status as grandfathered, a firearm must retain "the same **design and configuration** as they existed before…." PR at 27731 (emphasis added). Indeed, as ATF explains again, "new **designs or configurations** of firearms" would lose their special status. *Id.* (emphasis added). These statements indicate a two-part test. It would appear that, in order to be grandfathered, not only would a firearm need to be of an existing "design" – *i.e.*, an AR-15 type rifle – but also it would need to be of an existing "configuration" – meaning a particular model that is already on the market.

Should a manufacturer continue to market existing "designs" (AR-15s), but offer new models in different "configurations"[21] – this might mean that ATF would claim that the special grandfathered status no longer exists. It is not a stretch to imagine that ATF might argue that a different caliber barrel, different length handguard – or even different color furniture – would constitute a different "configuration" of an existing "design," at which point a firearm would be governed by the new rule. In such case, even an AR-15 would be required to have each of its alleged "frames and receivers" marked, unless the manufacturer was able to obtain a

---

[21] ATF uses "configuration" twenty-four times in the NPRM, but never defines it and leaves it to the reader's (and future prosecutor's) imagination.

classification letter from ATF on the sixty-year-old rifle, stating that it was permissible for only certain part(s) to be marked – a process wherein "ATF's decision whether to classify an item voluntarily submitted [allegedly] is entirely discretionary." PR at 27734. ATF further confirms this understanding by its statement that any classification letter does not apply to "any other sample, design, model, or configuration." PR at 27753.

While ATF appears to be marketing its Proposed Rule to the firearms industry as being of limited effect, only affecting new styles of firearms, in reality no firearm "design" would be safe – even if decades old – once offered in a new "configuration" – a term left in ATF's unlimited discretion to define and apply. Ostensibly, this is a "design" feature, and not a bug, of the Proposed Rule.

### IV.        ATF Reserves to Itself the Power to Act Arbitrarily and Capriciously.

As noted above, in numerous instances the Proposed Rule calls on the industry to submit "samples" to ATF for classification. *See* at 27728 ("manufacturers may wish to submit samples to ATF for classification of one or more particular components as the frame or receiver…."). *See also* at 27733, 27748, 27753. In fact, the Proposed Rule deliberately sets up a clear-as-mud framework wherein the industry will have no certainty as to which part(s) of firearms are frames or receivers, and thus will be forced to seek ATF's sanctification on a case-by-case basis.

For many years, ATF has suggested that the industry can voluntarily submit samples of products to the agency for testing and classification. ATF then provides private "determinations" or "classifications" or "private letter rulings" to the individual requester, opining as to the classification of the item (such as rifle versus handgun), whether it is regulated under the GCA or NFA, *etc*. Historically, ATF has refused to make these classification letters public, claiming that

they can be relied on only by the particular persons or entities who request them.[22] Moreover, ATF asserts the unreviewable discretion to revisit any classification at any time for any reason, and to reverse course should the agency see the need (as it did with bump stocks). And in recent years, ATF has taken the entirely new position that it will no longer perform "accessory classifications" of items that are not attached to complete and functioning firearms, leading to further industry uncertainty, severely constraining the ability of the system that it created to provide "guidance."

This preposterous classification system is not provided for in any statute or regulation but is entirely a bureaucratically created system designed to vest ATF officials with unbridled latitude and unreviewable discretion to do virtually whatever they want in any particular case. ATF Firearm Examiners who work within the Firearms Technology Industry Services Branch and Firearms Technology Criminal Branch are reported to operate without any written rules, guidelines, or standard operating procedures. As is obvious from their work, they do not follow the scientific method. These offices do not even keep accurate records of ATF's prior classifications, meaning examiners often are not even aware of what the agency has done in the past. This leads to absurd results where ATF classification letters have been in open conflict with one another – even letters written by the same examiner. This charade has led to introduction of legislation in Congress to crack down on the process and require formalized testing procedures, and even the taping of examinations.

---

[22] The ATF's premise of private letter rulings should be rejected outright. Not publishing guidance documents harms the industry and the public by failing to treat all manufacturers equally. Some favored manufacturers have their classification requests acted upon quickly, while some disfavored manufacturers wait for years to have the ATF classify their products. In any event, the ATF should publish all of its classifications and rulings so that the public can be made aware of how the agency's self-established jurisprudence has evolved, and understand what conduct and/or products have received (for now) the ATF stamp of approval.

**ATF now proposes to formally "codify" this horribly flawed system without any changes**. PR at 27733. As ATF explains, "[e]ach request would be submitted in writing or on an ATF form executed under the penalties of perjury…." *Id.* Yet as noted above, there is no legal basis for ATF's classification system, nor does the agency explain the need for a signed form to accompany submission samples. ATF's new form appears to be a way to create more technical paperwork violations that can then lead to selectively bringing trumped up criminal charges for "perjury."

Next, ATF claims that its "decision whether to classify an item voluntarily submitted is entirely discretionary." PR at 27734. ATF might as well have said that "**we reserve to ourselves the prerogative to act arbitrarily and capriciously**." ATF apparently believes it is permissible to establish by fiat a system where the industry is forced to seek permission from on high before marketing firearms and other products, while preserving the discretion of the agency to provide no clear answers.

Indeed, the agency's existing modus operandi is such that, if ATF does not like the product, or does not like the submitter, it simply will ignore the classification request and refuse to issue a determination letter, leaving the product hanging in legal limbo. Savage, isn't it? Moreover, even when ATF does issue a classification letter, turn around can be delayed well over a year – or at times even much longer – an impossibility for many manufacturers whose technological advances and product developments need to be brought to market quickly, and which cannot withstand month after month of bureaucratic foot dragging, without risk of becoming obsolete.

## V.     ATF Is Prohibited from Creating a National Gun Registry.

As its pièce de résistance, ATF seeks to thread the various parts of its Proposed Rule together in order to further an apparent scheme to create a national gun registry. First, ATF would require numerous additional non-firearm parts to be serialized and recorded, requiring background checks and dealer paperwork, and making gun owners need to go "on the radar" any time they purchase replacement parts or even some accessories for their firearms. Second, ATF seeks to require privately manufactured firearms to be serialized and registered in dealers' books. Now, ATF seeks to require all of that data to be collected, compiled, collated, and delivered up on a silver platter to ATF for entry into a centralized database.

ATF "proposes to amend 27 CFR 478.129 to remove language stating that FFL dealers and collectors need only keep A&D Records and ATF Forms 4473 for up to 20 years…." PR at 27735. Instead, ATF proposes to require FFLs "to retain all records until business or licensed activity is discontinued…." *Id.* And, of course, "[w]here discontinuance of the business is absolute, the records shall be delivered within 30 days following the business discontinuance to the ATF Out-of-Business Records Center." 27 CFR 478.127; 18 USC Section 923(g)(4). Finally, as recently reported, ATF's OOB Records Center has recently begun using high-speed scanners to digitize and OCR all "out of business" records obtained by the agency.

As ATF is no doubt aware, 18 USC Section 926(a)(3) makes quite clear that "[n]o[] system of registration of firearms, firearms owners, or firearms transactions or dispositions [shall] be established," including by using "records required to be maintained under this chapter…." ATF for years has flirted with the boundaries of this prohibition[i] – allowed by one statute to collect out of business records (for purposes such as tracing crime guns) but prohibited by another statute from using these records to establish a national gun registry (by creating a searchable digital database of gun sales). Now, ATF seeks to vacuum up even more records of

gun sales, together with forced registrations of privately made firearms, and then require that every record on every gun in America be stored in perpetuity and – eventually – handed over to the agency for addition to its database. The agency's radical anti-gun agenda could not be clearer.

## CONCLUSION

For the reasons stated above, the Proposed Rule should be withdrawn in its totality.

Respectfully submitted,

Gun Owners of America, Inc., and

Gun Owners Foundation

Contact:

Robert J. Olson

William J. Olson, P.C.

370 Maple Avenue, West, Suite 4

Vienna, Virginia 22180

wjo@mindspring.com

---

i Other recent ATF actions help to confirm the agency's conspiracy to create a prohibited gun registry. **First**, in Minnesota, Michigan, and Alabama, ATF recently revoked state concealed carry permits as alternatives under 18 USC Section 922(t)(3), thereby funneling more and more gun sales through the NICS system. **Second**, during ATF "compliance" inspections pursuant to 18 U.S.C. 923(g)(1)(A)-(C), many dealers have reported in recent years that ATF inspectors have been caught taking cell phone pictures of the dealers' bound books and Forms 4473, often en masse – not because of any problem with the records or suspicion of wrongdoing of any kind, and in violation of the Section 923(g)(1)(D) prohibition that "[t]he inspection and examination authorized by this paragraph shall not be construed as authorizing the Attorney General to seize any records or other documents other than those records or documents constituting material evidence of a violation of law." **Third**, ATF has sought to make this sort of unlawful seizure even easier for its inspectors, by amending the ATF Form 4473 to put the section with make, model, and serial number on the very same page as the section about identity of the transferee, changing from this to this. **Fourth**, ATF recently approved software that will permit a dealer to maintain his physical "bound book" of acquisitions and dispositions in electronic form, meaning that ATF inspectors can simply copy the bound book to a thumb drive, giving them an easily accessible record of the FFL's entire business.