IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| MOREHOUSE ENTERPRISES LLC d/b/a<br>BRIDGE CITY ORDNANCE *et al.*,<br><br>    Plaintiffs,<br><br>v.<br><br>BUREAU OF ALCOHOL, TOBACCO,<br>FIREARMS AND EXPLOSIVES *et al.*,<br><br>    Defendants. | Case No. 3:22-cv-00116-PDW-ARS |

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION
<u>FOR INJUNCTION PENDING APPEAL</u>**

The Court should deny Plaintiffs' Motion for Injunction Pending Appeal for the same reasons it denied Plaintiffs' Motion for Preliminary Injunction: Plaintiffs are not likely to succeed on the merits, they have not shown irreparable harm, and the balance of equities weighs against injunctive relief. None of the arguments raised in Plaintiffs' motion justifies reaching a different result than the Court reached in its preliminary injunction order.

## LEGAL STANDARD

"In ruling on a request for an injunction pending appeal, the court must engage in the same inquiry as when it reviews the grant or denial of a preliminary injunction." *Dish Network Serv. LLC v. Laducer*, No. 4:12-CV-058, 2012 WL 12860123, at *1 (D.N.D. Aug. 15, 2012) (quoting *Walker v. Lockhart*, 678 F.2d 68, 70 (8th Cir. 1982)). The Court considers the four *Dataphase* factors of likelihood of success on the merits, threat of irreparable harm to the movant, the balance between harm faced by the movant and harm that an injunction would cause to other parties, and the public interest. *Dataphase Sys., Inc., v. C L Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981) (en banc); *see also Hilton v. Braunskill*, 481 U.S. 770, 776 (1987). The balance of harms and public interest factors merge when the government is a party. *Nken v. Holder*, 556 U.S. 418, 435 (2009). Plaintiffs assert "that a party need not show a 'greater than fifty percent likelihood' of success on the merits" to obtain injunctive relief. Plaintiffs' Memorandum in Support of Motion for Injunction Pending Appeal, ECF No. 89-1, at 1 ("Pls. Mem.") (quoting *Dataphase*, 640 F.2d at 113). But the Eighth Circuit applies a heightened "more-likely-than-not standard" to "injunctions against the enforcement of statutes and regulations, which are 'entitled to a higher degree of deference and should not be enjoined lightly.'" *Sleep No. Corp. v. Young*, 33 F.4th 1012, 1016 (8th Cir. 2022) (quoting *Rodgers v. Bryant*, 942 F.3d 451, 455-56 (8th Cir. 2019)).

1

**ARGUMENT**

**I.      Plaintiffs Are Unlikely to Succeed on the Merits**

This Court already held in a detailed opinion that Plaintiffs are not likely to succeed on the merits of any of their claims. Rejecting Plaintiffs' claim that the Rule was not a "logical outgrowth" of the Notice, the Court concluded that "this appears to present a rather textbook example of how the administrative rulemaking process must proceed under the APA." Order Denying Motion for Preliminary Injunction, ECF No. 85, at 8 ("PI Order"). Rejecting Plaintiffs' claim that the Rule was arbitrary and capricious, this Court concluded that the Rule "appears to be the product of thoughtful and reasoned decision-making," *id.* at 20, that ATF "fully explain[ed]" changes from previous policy, *id.* at 21, and that ATF responded to comments in an "appropriate and legally accurate" manner, *id.* at 23. Addressing and rejecting each of Plaintiffs' statutory authority arguments, the Court determined that the Rule "falls well-within the ATF's agency rulemaking authority as delegated by Congress." *Id* at 9.

Plaintiffs do not attempt to show any error in this Court's opinion. Instead, they argue that the Court should issue an injunction even if it "disagrees as to their likelihood of success on the merits" so long as "the equities of the case suggest that the status quo should be maintained" and the merits question is "close." Pls. Mem. 2. This argument fails for several reasons. First, it ignores the "more-likely-than-not" standard for success that applies to injunctions against statutes or regulations. *Sleep Number*, 33 F.4th at 1016. Second, as explained below, the equities weigh against an injunction. Third, the merits questions are not particularly close. For the reasons stated in the Court's preliminary injunction opinion, ATF acted well within its statutory authority and the APA's procedural requirements in issuing the Rule.[1]

---

[1] In *VanDerStok v. Garland*, No. 4:22-CV-00691-O, 2022 WL 4009048 (N.D. Tex. Sept. 2, 2022), a district court concluded that the Rule exceeded ATF's statutory authority to the extent it defined "frame or receiver" to include partially complete frames or receivers that may readily be converted

2

## II. Plaintiffs Fail to Show Irreparable Harm

Nothing in Plaintiffs' motion disturbs this Court's conclusion that Plaintiffs failed to show irreparable harm. *Id.* at 24-25. Plaintiffs argue that irreparable harm exists because the Rule will force some sellers of products that the Rule regulates as firearms to dissolve their business. Pls. Mem. 3. But the Court already considered this supposed harm and dismissed it as "speculative." PI Order 25. Since then, another district court denied a motion for preliminary injunction filed by a seller of partially complete receivers raising very similar arguments as Plaintiffs here. *Div. 80, LLC v. Garland*, No. 3:22-cv-148, ECF No. 74 (S.D. Tex. Aug. 23, 2022). That court rejected the argument that the Rule would cause irreparable harm by forcing the seller out of business, concluding that "he does have a choice—he can get a license." *Id.* at 6; *see also id.* at 7 (ATF's prediction that some companies may choose to dissolve "does not suggest that those without licenses could not obtain one and maintain their businesses—just that they would not wish to do so").[2] Plaintiffs also suggest that this Court did not address the States' arguments for irreparable harm, but that is wrong. When this Court concluded that "the Plaintiffs have not met their burden to demonstrate irreparable harm," PI Order at 25, the Court included the States within the group of Plaintiffs, *id.* at 2 n.1; *see also* Defendants' Opposition to

---

into a functional frame or receiver and to the extent it defined "firearm" to include weapon parts kits that may readily be converted to expel a projectile. *Id.* at *4-*7. Those conclusions were incorrect for the reasons stated in this Court's preliminary injunction order. As this Court explained, "Congress defined 'firearm' more broadly than simply a fully operational weapon, as the statute expressly includes items that 'may readily be converted to expel a projectile.'" PI Order 10. Therefore, the Rule's inclusion of weapon parts kits in the definition of firearm "fit[s] squarely within the GCA's 'firearm' definition because after delivery, the kits are easily converted from mere parts into a weapon that expels a projectile." *Id.* Similarly, the position that "frame or receiver" cannot include incomplete frames or receivers that may readily be converted into a functional frame or receiver "would appear to contradict the plain language of the GCA, which clearly defined 'firearms' more broadly than a fully operational weapon." *Id.* at 11.

[2] By contrast, in *VanDerStok*, another district court found that a manufacturer of partially complete frames and receivers had demonstrated irreparable harm where it had lost $50,000 in revenue in the first week after the Rule took effect. *See id.* at *8. Although Defendants respectfully maintain that *VanDerStok* was incorrectly decided, Plaintiffs here have not established that they face concrete, irreparable harm of comparable magnitude. *See* PI Order 24-25.

3

Plaintiffs' Motion for Preliminary and/or Permanent Injunction, ECF No. 43, at 38-39 (addressing States' irreparable harm arguments).

### III. The Balance of Equities Weighs Against an Injunction

This Court concluded that the "balance of the equities and public interest . . . weighs against injunctive relief" because "[t]he rather speculative risk of harm to the Plaintiffs, on the one hand, does not outweigh the harm to the ATF's interest in law enforcement and public safety, on the other." *Id.* at 25. The *Division 80* court agreed, reasoning that "[t]he Government contends the implementation of the Final Rule will decrease the number of untraceable firearms in circulation, thus facilitating law enforcement's efforts to keep guns out of the hands of criminals," and a seller of partially completed receivers failed "to dispute this point or to explain why it is outweighed by equities favoring itself and similarly situated entities." *Div. 80*, at 16-17.

Plaintiffs' arguments do not call for a different conclusion. While Plaintiffs argue that the States will suffer "sovereign injury" through interference with "their own permissive legal schemes," Pls. Mem. 3, they failed to identify any state law with which the Rule interferes, either in this motion or in any earlier filing. Plaintiffs' reference to "curtail[ing]" of "Second Amendment activity," *id.*, is unavailing given this Court's conclusion that the Rule "remains constitutional under the Second Amendment," PI Order 17.

### CONCLUSION

The Court should deny Plaintiffs' Motion for Injunction Pending Appeal.

Dated:  September 8, 2022    Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

ALEXANDER K. HAAS
Director, Federal Programs Branch

LESLEY FARBY
Assistant Director, Federal Programs Branch

*/s/ Martin M. Tomlinson*
DANIEL RIESS
MARTIN M. TOMLINSON
TAISA M. GOODNATURE
JEREMY S.B. NEWMAN
Trial Attorneys
Civil Division, Federal Programs Branch
U.S. Department of Justice
1100 L Street, NW
Washington, DC 20005
Phone: (202) 353-4556
Email:  martin.m.tomlinson@usdoj.gov
*Attorneys for Defendants*