IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| MOREHOUSE ENTERPRISES, LLC <br> d/b/a BRIDGE CITY ORDNANCE, et al., <br><br> Plaintiffs, <br><br> v. <br><br> BUREAU OF ALCOHOL, TOBACCO, <br> FIREARMS AND EXPLOSIVES, et al., <br><br> Defendants. | Case No. 3:22-cv-00116-PDW-ARS |

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR INJUNCTION PENDING APPEAL**

I. **The *VanDerStok* Decision Demonstrates the Irreparable Harm Being Suffered by Plaintiffs**

As Defendants acknowledge, since the filing of Plaintiffs' Motion for Injunction Pending Appeal, ECF 89, the Northern District of Texas found a manufacturer of partially complete frames and receivers had, indeed, suffered irreparable harm, including having "lost $50,000 in revenue in the first week after the Rule took effect." Defs.' Opp. to Pls.' Mot. for Inj. Pending Appeal, ECF 94, at 2 n.1 ("Defs.' Opp."); *VanDerStok v. Garland*, No. 4:22-CV-00691-O, 2022 WL 4009048 (N.D. Tex. Sept. 2, 2022). The *VanDerStock* decision thus demonstrates that Plaintiffs' predictions of harms in their briefing prior to the Rule's effective date have come true and are being realized—demonstrable to a federal court—within just one week of the Rule going into effect. *Id.* The practical difference that allowed this Court to call such harms "speculative" at the time of its August 23, 2022, PI Order is that it was issued one day before the Rule went into effect whereas the *VanDerStok* briefing schedule allowed for evidence to be entered after the effective date.[1] *See*, Order Denying Mot. for Prelim. Inj., ECF 85, at 25 ("PI Order"); Order of Aug. 17, 2022, *VanDerStok*, 2022 WL 4009048 (ECF 17) (setting response and reply dates to August 26 and August 30, 2022, respectively).

Plaintiffs GOA and GOF represent over 2 million members and industry partners, including multiple businesses with similar product lines to *VanDerStok* plaintiff Tactical Machining, LLC, and these members and partners are experiencing similar irreparable harms caused by the Rule.

---

[1] It should also be noted that this Court admonished Plaintiffs for "wait[ing] until July 25" to move for injunctive relief and counted that timeline against Plaintiffs' irreparable harms claims, yet it was a case filed and decided after that date in which concrete harms were established. PI Order at 24.

*See*, Am. Compl. at ¶¶ 5-9 (GOA/GOF represent "members of the firearms community and industry, including but not limited to … manufacturers, distributors, and retailers of unregulated firearm parts (including '80% frames and receivers')" and "for each of the portions of the Final Rule challenged herein, GOA/GOF has numerous members and supporters who will be irreparably harmed."). Indeed, since the effective date of the Final Rule, numerous of these members and supporters have reported actual harm to their businesses on a far larger scale than that suffered by the plaintiff in *VanDerStok*. And these harms to business revenue likewise affect the states as alleged. *See*, Am. Compl. at ¶¶ 11-11.5; Pls.' Reply, ECF 78 at 19-20 ("PI Reply"). Indeed, the obvious consequence of the *VanDerStok* court's finding that "Tactical Machining lost nearly $50,000 in revenue" is that the state(s) in which those sales would have taken place likewise lost out on the sales tax associated with those transactions. 2022 WL 4009048 at *8. As similar transactions are lost out on in every Plaintiff state and involve multiple businesses, the irreparable harms from sales tax loss alone support an injunction.

## II.  Sovereign Injury Is Still Being Suffered

Defendants are also wrong in their claim that Plaintiffs "failed to identify any state law with which the Rule interferes." Defs.' Opp. at 4. To the contrary, Plaintiffs identified several state statutes with which the Rule conflicts, either directly or indirectly. PI Reply at 19-20 nn.17 & 18). To provide just one direct example for efficiency, Plaintiffs cited the Kansas Second Amendment Protection Act, Kan. Stat. Ann. § 50-1201, *et seq.*, (2013) ("Kansas Act"). PI Reply at 20 n.18. The Kansas Act states in part that personal firearms, accessories, or ammunition "manufactured commercially or privately and owned in Kansas … [are] not subject to any federal law, treaty, federal regulation, or federal executive action, including any federal firearm or ammunition registration program." Kan. Stat. Ann. § 50-1204(a). On its face, the Rule attempts

2

to regulate personal firearms manufactured in Kansas both by redefining "frame or receiver" and by requiring the serialization of any "PMF" on which professional services such as cerakoting or gunsmithing are performed. 87 Fed. Reg. 24,652 (April 26, 2022). Additionally, as Plaintiffs have consistently argued, the Rule establishes a *de facto* federal gun registry through its recordkeeping requirements. *See*, Pls.' Mem. in Supp. of their Mot. for Prelim. and/or Permanent Inj., ECF 14-1 at 3, 11-12 ("PI Motion"). The Court noted that the Rule creates an "extension" of recordkeeping requirements "from 20 years to the duration of the FFL's business." PI Order at 15-16. The practical effect of this is to violate the federal law prohibiting a gun registry or the transfer of firearms records to a government facility, 18 U.S.C. § 926, because such transfer is absolutely required upon the closing of an FFL's business; any records over 20 years old that would have been destroyed will now be required to be transferred to an ATF facility. 18 U.S.C. § 923(g)(4); Am. Compl. at ¶¶ 395-411; 602-618. The Rule admits that "after an FFL discontinues business … the GCA, 18 U.S.C. 923(g)(4), requires FFLs to provide their records to ATF," and as under the Rule records must be kept until an FFL goes out of business, there is no ultimate disposition available of any FFL firearms record from 20 years ago on other than transfer to the ATF. 87 Fed. Reg. 24,690. This is a clear conflict with the Kansas Act's rejection of any federal registration program.

Further, the Rule changes the definition of "frame or receiver" to include as firearms items that were not considered firearms in 2013 when the Kansas Act was passed, conflicting with the Kansas Legislature's declaration that such parts "are not firearms" and not subject to federal "authority to regulate firearms." Kan. Stat. Ann. § 50-1204(b). The Rule thus clearly and directly conflict with multiple parts of the Kansas Act, and Plaintiffs cited multiple similar acts in their briefing. And this does not even approach the hollow argument Defendants lob against the States'

3

interests in protecting public safety through their permissive regimes, which by definition include a government's choice to *restrain itself* from regulating already-legal activity. It is absurd to imply that if a State wishes to protect its citizens' ability to carry out already-legal activity it must somehow spend its legislative resources proclaiming that what is permitted is still permitted. Such an approach offends our constitutional order and basic notions of American liberty and individual sovereignty—including the People as the source of the government's power and not the other way around. *See, e.g.*, U.S. Const. amend. IX & X (reserving rights and powers to the people and states without requiring their specific enumeration); The Declaration of Independence para. 2 (U.S. 1776) ("Governments are instituted among Men, deriving their just powers from the consent of the governed"); and The Federalist No. 51 (James Madison) ("A dependence on the people is, no doubt, the primary control on the government…").

### III. The *VanDerStok* Court Was Correct on the Merits

The only other federal court (to Plaintiffs' knowledge) to examine the Rule's legality held that Plaintiffs are correct on the merits: the Rule "exceeds the scope of ATF's authority under the Gun Control Act." *VanDerStok*, 2022 WL 4009048 at *7; *cf. Division 80, LLC v. Garland*, No. 3:22-cv-148, 2022 WL 3648454 at *6 (S.D. Tex. Aug. 23, 2022) (declining to address likelihood of success on the merits). What the decisions from the *Division 80* court and this one have in common is that they both were issued on August 23, prior to the Rule's effective date, and they both found that Plaintiffs had not established that they would suffer irreparable harms. *See*, *id.* at *4 ("Division 80 has [not] shown that it is likely to suffer irreparable harm absent preliminary relief…."); and PI Order at 25 ("the Court concludes the Plaintiffs have not met their burden to demonstrate irreparable harm."). Yet, as noted above, the briefing in *VanDerStok* included evidence after the effective date demonstrating significant irreparable harm to a plaintiff with very

4

similar facts to some of those represented here.  Part I, *supra*.

The harm element being satisfied, the *VanDerStok* court proceeded to the merits, holding, *inter alia*, that "Congress has not extended ATF's authority so far…. the Final Rule treats incomplete receivers that are *not yet receivers* as if they were receivers under the statutory definition, which is clearly a step too far." *VanDerStock*, 2022 WL 4009048 at *5.  It further held that "Congress intentionally chose not to regulate 'weapon' parts generally" and that it did not regulate "parts kits" as firearms although it had ample opportunity to do so.  *Id.* at *6.  This is the correct reading of the law, and Defendants' attempts to reject the *VanDerStok* holding commits the same erroneous abuse of language Plaintiffs have described in other parts of their briefing where Defendants claim any perceived Congressional purpose not fulfilled by the statutory text is a license to expand the statute's scope and regulate as they please.  *See* PI Reply at 4-7 (detailing Defendants' impermissible expansion of statutory terms and incorporation of words not present in the text).  And *VanDerStok* did not even involve all of the merits issues Plaintiffs bring in their much broader challenge to the Rule here.  These developments underscore the need to preserve the status quo while the merits are being addressed on appeal because it demonstrates an increased likelihood of reversal of this Court's opinion and, at the very least, how "substantial" and "close" these issues are.  *See* Pls.' Mem. in Supp. of Mot. for Inj. Pending Appeal, ECF 89-1 at 2.  Plaintiffs reiterate the correctness of all their merits arguments, which favor an injunction pending appeal especially in light of *VanDerStok's* holding.

## CONCLUSION

For the foregoing reasons, this Court should grant Plaintiffs' Motion for Injunction Pending Appeal.

Respectfully submitted,

5

Date:   September 15, 2022

/s/ Stephen D. Stamboulieh
Stephen D. Stamboulieh (MS # 102784)
Stambouleih Law, PLLC
P.O. Box 428
Olive Branch, MS  38654
(601) 852-3440
stephen@sdslaw.us

Robert J. Olson (VA # 82488)
William J. Olson, PC
370 Maple Ave. West, Suite 4
Vienna, VA 22180-5615
703-356-5070 (T)
703-356-5085 (F)
wjo@mindspring.com

Robert B. Stock (ND # 05919)
Vogel Law Firm
218 NP Avenue
Fargo, ND  58107-1389
701-237-6983 (T)
701-237-0847 (F)
rstock@vogellaw.com
For service: rbslitgroup@vogellaw.com
*Counsel for Morehouse Enterprises, LLC d/b/a Bridge City Ordnance, Eliezer Jimenez, Gun Owners of America, Inc., and Gun Owners Foundation*


/s/ Anthony R. Napolitano
MARK BRNOVICH
Attorney General of Arizona

MICHAEL CATLETT*
  *Deputy Solicitor General*
ANTHONY NAPOLITANO
  *Assistant Attorney General*
ARIZONA ATTORNEY GENERAL'S OFFICE
2005 N. Central Ave.
Phoenix, Arizona 85004
(602) 542-8860
Michael.Catlett@azag.gov
Anthony.Napolitano@azag.gov
*Counsel for Plaintiff State of Arizona*

6

PATRICK MORRISEY
Attorney General of West Virginia

LINDSAY SEE
  *Solicitor General*
MICHAEL R. WILLIAMS
  *Senior Deputy Solicitor General*
OFFICE OF THE WEST VIRGINIA ATTORNEY GENERAL
State Capitol, Bldg 1, Room E-26
Charleston, WV 25305
(681) 313-4550
Lindsay.S.See@wvago.gov
Michael.R.Williams@wvago.gov
*Counsel for Plaintiff State of West Virginia*


TREG R. TAYLOR
Attorney General of Alaska

AARON C. PETERSON
  *Senior Assistant Attorney General*
Alaska Department of Law
1031 W. 4th Avenue #200
Anchorage, AK 99501
Aaron.peterson@alaska.gov
(907) 269-5165
*Counsel for Plaintiff State of Alaska*


LESLIE RUTLEDGE
Arkansas Attorney General

NICHOLAS J. BRONNI*
Arkansas Solicitor General
DYLAN L. JACOBS*
Deputy Solicitor General
OFFICE OF THE ARKANSAS ATTORNEY GENERAL
323 Center Street, Suite 200
Little Rock, Arkansas 72201
(501) 682-2007
Nicholas.bronni@arkansasag.gov
dylan.jacobs@arkansasag.gov
*Counsel for Plaintiff State of Arkansas*

7

LAWRENCE G. WASDEN
Attorney General of Idaho

DAYTON REED
  *Deputy Attorney General*
OFFICE OF THE IDAHO ATTORNEY GENERAL
P.O. Box 83720
Boise, ID 83720-0010
(208) 334-2400
dayton.reed@ag.idaho.gov
*Counsel for Plaintiff State of Idaho*


THEODORE E. ROKITA
Indiana Attorney General

BETSY M. DENARDI*
Director of Complex Litigation
Indiana Government Center South
302 W. Washington St., 5th Floor
Indianapolis, IN 46204
(317) 232-6201
Betsy.DeNardi@atg.in.gov
*Counsel for Plaintiff State of Indiana*


DEREK SCHMIDT
Attorney General of Kansas

BRANT M. LAUE*
  *Solicitor General*
OFFICE OF KANSAS ATTORNEY GENERAL
120 SW 10th Avenue, 3rd Floor
Topeka, KS 66612-1597
(785) 368-8435 Phone
Brant.Laue@ag.ks.gov


DANIEL CAMERON
Attorney General of Kentucky

AARON J. SILLETTO
  *Assistant Attorney General*
OFFICE OF THE ATTORNEY GENERAL OF KENTUCKY
700 Capital Avenue, Suite 118
Frankfort, Kentucky 40601

8

Phone: (502) 696-5300
Aaron.Silletto@ky.gov
*Counsel for Plaintiff Commonwealth of Kentucky*


JEFF LANDRY
Attorney General of Louisiana

ELIZABETH B. MURRILL*
  *Solicitor General*
LOUISIANA DEPARTMENT OF JUSTICE
1885 N. Third Street
Baton Rouge, Louisiana 70804
(225) 326-6766
murrille@ag.louisiana.gov
*Counsel for Plaintiff State of Louisiana*


ERIC S. SCHMITT
Attorney General of Missouri

D. JOHN SAUER
  *Solicitor General*
OFFICE OF THE ATTORNEY GENERAL OF MISSOURI
Supreme Court Building
207 W. High Street
P.O. Box 899
Jefferson City, MO 65102
(573) 751-8870
John.Sauer@ago.mo.gov
*Counsel for Plaintiff State of Missouri*


AUSTIN KNUDSEN
Attorney General of Montana

DAVID M.S. DEWHIRST
  *Solicitor General*
KATHLEEN L. SMITHGALL
  *Assistant Solicitor General*
MONTANA DEPARTMENT OF JUSTICE
P.O. Box 201401
Helena, MT 59620-1401
Phone: (406) 444-2026
david.dewhirst@mt.gov
kathleen.smithgall@mt.gov

*Counsel for Plaintiff State of Montana*


DOUGLAS J. PETERSON
Attorney General of Nebraska

JAMES A. CAMPBELL*
  *Solicitor General*
Office of the Nebraska Attorney General
2115 State Capitol
Lincoln, NE 68509
(402) 471-2682
jim.campbell@nebraska.gov
*Counsel for Plaintiff State of Nebraska*


JOHN M. O'CONNOR
Attorney General of Oklahoma

BRYAN CLEVELAND
  *Deputy Solicitor General*
OKLAHOMA ATTORNEY GENERAL'S OFFICE
313 NE 21st St.
Oklahoma City, OK 73105
(405) 522-1961
Bryan.cleveland@oag.ok.gov
*Counsel for Plaintiff State of Oklahoma*


ALAN WILSON
Attorney General of South Carolina

J. EMORY SMITH, JR.
Deputy Solicitor General
OFFICE OF THE ATTORNEY GENERAL OF SOUTH CAROLINA
P.O. Box 11549
Columbia, SC 29211
(803) 734-3680
Email: ESmith@scag.gov
*Attorneys for Plaintiff State of South Carolina*


KEN PAXTON
Attorney General of Texas

AARON F. REITZ

*Deputy Attorney General for Legal Strategy*
CHARLIE ELDRED
  *Special Counsel for Legal Strategy*
OFFICE OF THE ATTORNEY GENERAL OF TEXAS
P.O. Box 12548
Austin, Texas 78711-2548
(512) 936-1700
Aaron.Reitz@oag.texas.gov
Charlie.Eldred@oag.texas.gov
*Counsel for Plaintiff State of Texas*


SEAN D. REYES
Attorney General of Utah

MELISSA A. HOLYOAK*
  *Solicitor General*
OFFICE OF THE UTAH ATTORNEY GENERAL
350 N. State Street, Suite 230
Salt Lake City, UT 84114
(801) 366-0260
Email: melissaholyoak@agutah.gov
*Counsel for Plaintiff State of Utah*


BRIDGET HILL
Attorney General of Wyoming

RYAN SCHELHAAS
Chief Deputy Attorney General
OFFICE OF THE WYOMING ATTORNEY GENERAL
109 State Capitol
Cheyenne, WY 82002
Tel: (307) 777-5786
ryan.schelhaas@wyo.gov
*Counsel for Plaintiff State of Wyoming*

\* *Application for Admission Forthcoming*

## CERTIFICATE OF SERVICE

I, Anthony R. Napolitano, hereby certify that I have on this day, caused the foregoing document or pleading to be filed with this Court's CM/ECF system, which caused a notice of the filing and a true and correct copy of the same to be delivered to all counsel of record.

Dated: September 15, 2022.

                                              */s/ Anthony R. Napolitano*
                                              Anthony R. Napolitano