# United States Court of Appeals
## For the Eighth Circuit

_____

No. 22-2812
_____

Morehouse Enterprises, LLC, doing business as Bridge City Ordinance; Eliezer Jimenez; Gun Owners of America, Inc.; Gun Owners Foundation

*Plaintiffs - Appellants*

State of Arizona; State of West Virginia; State of Alaska; State of Arkansas; State of Idaho; State of Indiana; State of Kansas; Commonwealth of Kentucky; State of Louisiana; State of Missouri; State of Montana; State of Nebraska; State of Oklahoma; State of South Carolina; State of Texas; State of Utah; State of Wyoming

*Plaintiffs*

v.

Bureau of Alcohol, Tobacco, Firearms and Explosives; United States Department of Justice; Bureau of Alcohol, Tobacco & Firearms, Director, Steven M. Dettelbach (formerly Gary M. Restaino)

*Defendants - Appellees*

------------------------------

District of Columbia; State of New Jersey; State of Pennsylvania; State of California; State of Colorado; State of Connecticut; State of Delaware; State of Hawaii; State of Illinois; State of Maine; State of Maryland; State of Massachusetts; State of Michigan; State of Minnesota; State of New York; State of North Carolina; State of Oregon; State of Rhode Island; State of Washington; State of Wisconsin; Prosecutors Against Gun Violence; 16 Major Cities; Gun Violence Prevention Groups

*Amici on Behalf of Appellee(s)*

_____

No. 22-2854
_____

Morehouse Enterprises, LLC, doing business as Bridge City Ordinance; Eliezer Jimenez; Gun Owners of America, Inc.; Gun Owners Foundation; State of Arizona

*Plaintiffs*

State of West Virginia; State of Alaska; State of Arkansas; State of Idaho; State of Indiana; State of Kansas; Commonwealth of Kentucky; State of Louisiana; State of Missouri; State of Montana; State of Nebraska; State of Oklahoma; State of South Carolina; State of Texas; State of Utah; State of Wyoming

*Plaintiffs - Appellants*

v.

Bureau of Alcohol, Tobacco, Firearms and Explosives; United States Department of Justice; Bureau of Alcohol, Tobacco & Firearms, Director, Steven M. Dettelbach (formerly Gary M. Restaino)

*Defendants - Appellees*

------------------------------

District of Columbia; State of New Jersey; State of Pennsylvania; State of California; State of Colorado; State of Connecticut; State of Delaware; State of Hawaii; State of Illinois; State of Maine; State of Maryland; State of Massachusetts; State of Michigan; State of Minnesota; State of New York; State of North Carolina; State of Oregon; State of Rhode Island; State of Washington; State of Wisconsin; Prosecutors Against Gun Violence; 16 Major Cities; Gun Violence Prevention Groups

*Amici on Behalf of Appellee(s)*
_____

Appeal from United States District Court
for the District of North Dakota - Eastern

-2-

_____

Submitted: March 14, 2023
Filed: August 22, 2023

_____

Before COLLOTON, MELLOY, and GRUENDER, Circuit Judges.

_____

MELLOY, Circuit Judge.

Two organizations, one individual, one business, (collectively "Private Plaintiffs") and seventeen states ("the States") sued the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") for overstepping its statutory authority and for violating federal law in promulgating the "Definition of 'Frame or Receiver' and Identification of Firearms" ("Final Rule"). 87 Fed. Reg. 24,652 (April 26, 2022) (codified at 27 C.F.R. pts. 447, 478, and 479). The plaintiffs appeal the district court's[1] denial of a motion for a preliminary injunction. We affirm.

I.

The Gun Control Act of 1968 ("the Act") requires anyone "engag[ing] in the business of importing, manufacturing, or dealing in firearms" to be licensed and places certain requirements—such as record keeping—on licensed persons. 18 U.S.C. § 923(a), (g); see generally Gun Control Act of 1968, Pub. L. No. 90-618, § 101, 82 Stat. 1213-1236 (1968) (codified at 18 U.S.C. § 921–28). The Act defines "firearm" as "(A) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; (B) the frame or receiver of any such weapon; (C) any firearm muffler or firearm silencer; or (D) any destructive device. Such term does not include an antique firearm." 18 U.S.C. § 921(a)(3). The responsibility for administering and enforcing

---

[1]The Honorable Peter D. Welte, Chief Judge, United States District Court for the District of North Dakota.

the Act is delegated to the Director of the ATF subject to the direction of the Attorney General. See 26 U.S.C. § 599A.

The ATF has promulgated rules and regulations defining terms necessary to enforce the Act, such as "frame or receiver." In 2021, ATF began the process of updating these rules and regulations to reflect changes to firearms in circulation. In May 2021, the ATF issued a Notice of Proposed Rule Making ("Notice"). See generally Definition of "Frame or Receiver" and Identification of Firearms, 86 Fed. Reg. 27,720 (proposed May 21, 2021) (to be codified at 27 CFR pts. 447, 478, and 479). The summary of the Notice stated:

> The Department of Justice ("Department") proposes amending Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") regulations to provide new regulatory definitions of "firearm frame or receiver" and "frame or receiver" because the current regulations fail to capture the full meaning of those terms. The Department also proposes amending ATF's definitions of "firearm" and "gunsmith" to clarify the meaning of those terms, and to provide definitions of terms such as "complete weapon," "complete muffler or silencer device," "privately made firearm," and "readily" for purposes of clarity given advancements in firearms technology. Further, the Department proposes amendments to ATF's regulations on marking and recordkeeping that are necessary to implement these new or amended definitions.

Notice, 86 Fed. Reg. at 27,720. The Notice contained the text of the proposed rule. The comment period closed on August 19, 2021. ATF and the DOJ reviewed over 290,000 public comments, made several changes to the proposed definitions, and published the Final Rule on April 26, 2022. The Final Rule became effective on August 24, 2022. See Final Rule, 87 Fed. Reg. 24,652.

On July 5, 2022, Private Plaintiffs filed a complaint in the district court. Private Plaintiffs include: 1) an individual who lives in North Dakota and buys materials online to make firearms; 2) an LLC that holds an active federal firearms license and sells firearms in North Dakota; 3) a California corporation formed to

protect the Second Amendment rights of gun owners; and 4) a Virginia corporation that operates as a nonprofit legal defense and educational foundation. Private Plaintiffs and the States filed an amended complaint on July 27.[2] The two complaints assert the same causes of action. The complaints discuss distinct harms for the different categories of plaintiffs.

The plaintiffs have three categories of claims. First, the plaintiffs argue the Final Rule violates the APA because the Notice did not give interested parties fair notice. Second, the plaintiffs argue the Final Rule violates federal law in several ways including: 1) updating definitions in a way that impermissibly expands the scope of the Act; 2) creating a new requirement that dealers put serial numbers on firearms; 3) creating a national gun registry in violation of 18 U.S.C. § 926 ("no such rule . . . may require that records required to be maintained under this chapter or any portion of the contents of such records, be recorded at or transferred to a facility owned, managed, or controlled by the United States[]"); and 4) generating requirements in violation of the Second Amendment. Finally, the plaintiffs argue the rule is arbitrary and capricious.

On August 23, 2022, the district court denied a motion for a preliminary injunction. On October 4, this court denied a motion for an injunction pending appeal. All parties have agreed to stay the case in the district court pending the result of this interlocutory appeal.[3]

---

[2]The States were: Arizona, West Virginia, Alaska, Arkansas, Idaho, Indiana, Kansas, Kentucky, Louisiana, Missouri, Montana, Nebraska, Oklahoma, South Carolina, Texas, Utah, Wyoming. Arizona was voluntarily dismissed from the lawsuit on March 20, 2023.

[3]A February 2023 joint status report in the district court stated: "it would best serve the interests of all parties involved" to stay the case pending this interlocutory appeal. The next status report is due to the district court by September 1, 2023.

II.

"A plaintiff seeking a preliminary injunction must establish four factors showing such relief is warranted: (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest." MPAY Inc. v. Erie Custom Comput. Applications, Inc., 970 F.3d 1010, 1015 (8th Cir. 2020) (quotation marks and citations omitted). When deciding whether to grant a preliminary injunction, courts ask "whether the balance of equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are determined." Nebraska v. Biden, 52 F.4th 1044, 1046 (8th Cir. 2022) (per curiam) (citation omitted). The movant bears the burden of demonstrating the preliminary injunction is warranted because a preliminary injunction is an "extraordinary remedy never awarded as of right." Progressive Techs., Inc. v. Chaffin Holdings, Inc., 33 F.4th 481, 485 (8th Cir. 2022) (citation omitted).

The district court concluded the plaintiffs had not demonstrated a likelihood of success on any of their claims. The district court also concluded "the Plaintiffs had not met their burden to demonstrate irreparable harm." Due to the failure to show the first two factors, the district court found neither the balance of equities nor the public interest favored a preliminary injunction. The Eighth Circuit "review[s] a district court's ultimate ruling on a preliminary injunction for abuse of discretion, though we review its underlying legal conclusions de novo. . . . A district court abuses its discretion in denying a preliminary injunction if it rests its conclusion on clearly erroneous factual findings or erroneous legal conclusions." MPAY Inc., 970 F.3d at 1015 (citations omitted).

III.

A.

Because, as discussed below, we find the plaintiffs have failed to show they will suffer irreparable harm absent a preliminary injunction, we need not address the likelihood of success on the merits. Grasso Enters., LLC v. Express Scripts, Inc., 809 F.3d 1033, 1040 (8th Cir. 2016) (holding the absence of irreparable harm "is an independently sufficient ground upon which to deny a preliminary injunction."). This is especially true when, as is the case here, we are not the only court addressing the merits of these arguments. See Garland v. VanDerStok, U.S. Sup. Ct. No. 23A82 (Miscellaneous Order Aug. 8, 2023).[4]

B.

To show irreparable harm, "a party must show that the harm is certain and great and of such imminence that there is a clear and present need for equitable relief." Dakotans for Health v. Noem, 52 F.4th 381, 392 (8th Cir. 2022) (citation omitted). The plaintiffs must show the harm is "not merely a 'possibility'" but is likely to occur absent preliminary injunctive relief. Tumey v. Mycroft AI, Inc., 27 F.4th 657, 665 (8th Cir. 2022) (citations omitted). The plaintiffs argue two categories of irreparable harms: 1) Second Amendment harms; and 2) economic harms.[5] Here,

---

[4]The VanDerStok case is in a somewhat unusual procedural posture. The Northern District of Texas entered a final order invaliding the entire Final Rule which had become effective on August 24, 2022. On appeal, the Fifth Circuit issued a stay pending appeal as to part of that district court's order. The result of the stay pending appeal would have been for the majority of the Final Rule to remain in effect while two provisions would have been vacated. Then, on an application for stay, the Supreme Court issued an order granting a stay pending appeal as to the entire district court order. The net effect of these orders is that the Final Rule will remain in effect in its entirety while the Fifth Circuit considers the appeal.

[5]The States present several distinct harms. We need not address these harms as we find the states lack standing. The states allege several harms they claim warrant

-7-

the harms, if any, are so slight and speculative that we find the district court did not error in denying a preliminary injunction.

i.

The plaintiffs assert they will suffer Second Amendment harm absent a preliminary injunction. We conclude that the plaintiffs have alleged a mere "possibility of irreparable harm before a decision on the merits can be rendered." Id. (quotation marks and citation omitted). They have failed to "show that irreparable injury is *likely* in the absence of an injunction[.]" Id. Our conclusion, at this early stage of litigation, does not speak to the merits of a Second Amendment claim later in this litigation.

In most instances, constitutional violations constitute irreparable harm. See Powell v. Ryan, 855 F.3d 899, 904 (8th Cir. 2017) (en banc). However, the assertion of a possible constitutional violation does not release plaintiffs from their burden of showing that irreparable harm is more than just a "mere possibility." See Sessler v. City of Davenport, Iowa, 990 F.3d 1150, 1156 (8th Cir. 2021).

The plaintiffs have not clearly shown how the Final Rule will prevent them from engaging in constitutionally protected conduct. Regarding the business plaintiff in this case, we are left unsure what behavior it wishes to engage in, as an LLC, that is protected by the Second Amendment. For the individual plaintiff, as well as the advocacy organizations purporting to represent the rights of individual

---

standing: 1) the Final Rule will result in fewer firearms in circulation and therefore less crime deterrence; 2) the Final Rule frustrates state firearm policy; and 3) the Final Rule will force firearm dealers to close thus decreasing state tax revenue. These alleged harms are vague and speculative. The states have not shown these injuries are "concrete, particularized, and actual or imminent[.]" Davis v. Fed. Election Comm'n, 554 U.S. 724, 733 (2008). Nor have plaintiffs shown these alleged harms are "fairly traceable to the defendant's challenged behavior; and likely to be redressed by a favorable ruling." Id.

firearm owners, we are left unsure how the Final Rule—that creates no new obligations on individuals—will prevent individuals from engaging in protected Second Amendment activity. See id. (finding the plaintiff failed to show irreparable harm when he could not show he would have engaged in constitutionally protected conduct absent the government regulation). The record needs to be developed further to explain both the Second Amendment rights of the plaintiffs in this case and how the Final Rule will impact those rights.

ii.

The plaintiffs also argue they will suffer economic harm without a preliminary injunction. The plaintiffs assert generally that compliance costs and uncertainty surrounding the validity and scope of the Final Rule will be costly to businesses and lead to fewer sales of firearms. However, the plaintiffs do not explain the economic harm in definite enough terms to show the extent of any harm is "actual and not theoretical." Packard Elevator v. I.C.C., 782 F.2d 112, 115 (8th Cir. 1986). The plaintiffs do not try to quantify, or clearly explain, their generally alleged compliance costs. The plaintiffs also fail to explain how the Final Rule's regulations will impact their overall business model in a way that will result in closures. "Injunctive relief 'will not be granted against something merely feared as liable to occur at some indefinite time'; the party seeking injunctive relief must show that '[t]he injury complained of [is] of such *imminence* that there is a "clear and present" need for equitable relief to prevent irreparable harm.'" Id. (citations omitted). Without more information about the financial impact of the Final Rule, we find no clear and present need for preliminary injunctive relief.

In asking for a preliminary injunction, the plaintiff "is not required to prove with certainty the threat of irreparable harm, but it must prove that 'irreparable injury is likely in the absence of an injunction.'" Sleep No. Corp. v. Young, 33 F.4th 1012, 1018 (8th Cir. 2022) (citation omitted). The district court did not abuse its discretion in concluding plaintiffs have not met their burden.

C.

The third and fourth factors for a preliminary injunction—harm to the opposing party and the public interest—merge when the Government is the party opposing the preliminary injunction. Nken v. Holder, 556 U.S. 418, 435 (2009). Given the lack of irreparable harm, we do not find that "the balance of equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are determined." Nebraska v. Biden, 52 F.4th at 1046 (citation omitted).

IV.

Given a lack of irreparable harm, we conclude the district court did not abuse its discretion in denying the preliminary injunction.

_____